[No. S035076. Nov. 28, 1994.]

THE PEOPLE, Plaintiff and Appellant, v.
JOSE NAPOLEON SANTAMARIA, Defendant and Respondent.

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Joan Killeen, Deputy Attorneys General, for Plaintiff and Appellant.

John J. Meehan, District Attorney (Alameda), William M. Baldwin, Assistant District Attorney, and Jeff H. Rubin, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Lawrence A. Gibbs, under appointment by the Supreme Court, for Defendant and Respondent.

## OPINION

**ARABIAN, J.**—Do collateral estoppel principles mandate that after a judgment is reversed on appeal, the original jury's finding on a sentence enhancing allegation affects retrial of a murder charge, even though the same jury *convicted* defendant of that murder? This important question, implicating California's ability to effectively prosecute violent crime, has divided the Courts of Appeal.

Finding this case different from *Ashe v. Swenson* (1970) 397 U.S. 436 [25 L.Ed.2d 469, 90 S.Ct. 1189], the landmark case engrafting collateral estoppel onto the double jeopardy clause, we conclude that the doctrine does not apply, and reverse the judgment of the Court of Appeal, which affirmed the dismissal of a murder charge.

### I. FACTS AND PROCEDURAL HISTORY

On September 5, 1985, the body of Victor Guadron was discovered in Moss Beach. Evidence indicated the body had been stabbed, run over by a car, and strangled, and that cash and jewelry had been taken from the victim. Defendant was charged with Guadron's murder and robbery (Pen. Code, §§ 187, 211), and with a robbery-murder special circumstance (Pen. Code, § 190.2, subd. (a)(17)(i)). The information also contained a sentence enhancing allegation that defendant personally used a knife in the commission of the crime. (Pen. Code, § 12022, subd. (b).)

The case was tried before a jury. The main prosecution witness was Anthony Nubla, who had pleaded guilty to being an accessory to the murder

and agreed to cooperate with the prosecution. Nubla testified that in the morning of September 5, at defendant's request, he gave him and Guadron a ride. After running an errand, they drove to Dolores Park, where Nubla got out to buy marijuana. He heard someone yell "Help," turned around, and saw defendant hugging Guadron's neck and stabbing him.

Nubla returned to the car. Defendant told him to drive toward Pacifica. On the way, defendant took Guadron's jewelry and money. At Moss Beach, they stopped and pulled Guadron out of the car. Defendant then drove the car twice over Guadron's body. The two returned to defendant's house and cleaned the car.

Nubla's testimony and other evidence showed that about a week later Nubla and defendant pawned the stolen jewelry. In May 1987, two conversations between Nubla and defendant were recorded. Defendant did not explicitly admit his involvement in the murder, but did make incriminating statements.

The jury convicted defendant of murder and robbery, and found true the robbery-murder special circumstance, but found not true the allegation that defendant personally used a knife during the commission of the crime. On the first appeal, the Court of Appeal reversed the judgment, finding that an 11-day continuance during jury deliberations was prejudicial error. (*People v. Santamaria* (1991) 229 Cal.App.3d 269 [280 Cal.Rptr. 43].)

On remand, the People filed a new information identical to the previous one except that it did not include the weapon enhancement allegation. Defendant promptly moved, "based on double jeopardy clause, to prohibit retrial of defendant for use of dangerous weapon, to limit evidence and preclude prosecution's reliance on theory adjudicated in defendant's favor at first trial." The trial court largely granted the motion. It ruled the prosecution could not retry the enhancement allegation (which the new information had not even alleged). In addition, and pertinent here, the court precluded the prosecution "from retrying the defendant on the theory that he personally used the knife during the killing. [¶] To this end, the jury is to be instructed at appropriate intervals throughout the case that the defendant did not personally use a knife during the killing of the victim." The defendant's motion regarding the introduction of evidence was "denied without prejudice to objections, particularly, as to relevance during the course of the trial." Among the evidence defendant had sought to exclude was Nubla's testimony that he saw defendant stab the victim.

The court stated its belief that there were "several alternate instrumentalities of death." The district attorney replied, "The cause of death in this case

was a knife wound. It was not manual strangulation." Defense counsel added, "My belief is that Dr. Benson testified that the cause of death was a stab wound to the hepatic artery complicated by the other factors . . . ."

When the prosecution later stated that it was unable to proceed in light of the ruling, the court dismissed the case pursuant to Penal Code section 1385. The People appealed. (Pen. Code, § 1238, subd. (a)(8).)[1] The Court of Appeal affirmed, finding that "the negative enhancement finding precludes the People from retrying defendant on the theory he personally killed the victim with a knife."

We granted the Attorney General's petition for review.

## II. Discussion

The parties agree that the jury's "not true" finding on the knife-use enhancement allegation precludes retrial of that allegation. (*People* v. *Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 78, fn. 22 [2 Cal.Rptr.2d 389, 820 P.2d 613]; see also *People* v. *Saunders* (1993) 5 Cal.4th 580, 593 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) Defendant additionally argues that the finding limits the retrial of the murder charge of which the same jury had found him guilty. He claims that at retrial, the prosecution had to prove some basis for liability, such as that defendant aided and abetted the actual perpetrator, that did not involve personal knife use, and that the trial court correctly stated an intent to instruct the jury that he did *not* use the knife. When the prosecution admitted an inability to prove defendant guilty on a different basis than before, he argues, the charges were properly dismissed.

### A. Background

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." (See also Cal. Const., art. I, § 15 ["Persons may not twice be put in jeopardy for the same offense . . . ."]; *People* v. *Saunders, supra,* 5 Cal.4th at p. 593.)

■ "It has long been settled . . . that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of

---

[1]Citing *People* v. *Yarbrough* (1991) 227 Cal.App.3d 1650, 1653-1656 [278 Cal.Rptr. 703], the Court of Appeal held that the appeal from the dismissal "permits review of the underlying ruling." Defendant does not challenge that holding.

some error in the proceedings leading to conviction." (*Lockhart* v. *Nelson* (1988) 488 U.S. 33, 38 [102 L.Ed.2d 265, 272, 109 S.Ct. 285]; see also *United States* v. *Ball* (1896) 163 U.S. 662 [41 L.Ed. 300, 16 S.Ct. 1192]; cf. *Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141] [recognizing an exception when the sole ground for the reversal is insufficiency of the evidence to sustain the verdict].) "[T]o require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." (*United States* v. *Scott* (1978) 437 U.S. 82, 91 [57 L.Ed.2d 65, 74, 98 S.Ct. 2187].)

■ It is equally settled that an inherently inconsistent verdict is allowed to stand; if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both. (*United States* v. *Powell* (1984) 469 U.S. 57 [83 L.Ed.2d 461, 105 S.Ct. 471]; *People* v. *Pahl* (1991) 226 Cal.App.3d 1651, 1656-1657 [277 Cal.Rptr. 656]; see Pen. Code, § 954 ["An acquittal of one or more counts shall not be deemed an acquittal of any other count."]; see also *People* v. *Nunez* (1986) 183 Cal.App.3d 214, 225-228 [228 Cal.Rptr. 64] [applying the rule to an enhancement finding].) When a jury renders inconsistent verdicts, "it is unclear whose ox has been gored." (*United States* v. *Powell, supra,* 469 U.S. at p. 65 [83 L.Ed.2d at p. 469].) The jury may have been convinced of guilt but arrived at an inconsistent acquittal or not true finding "through mistake, compromise, or lenity . . . ." (*Ibid.*) Because the defendant is given the benefit of the acquittal, "it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted." (*Id.* at p. 69 [83 L.Ed.2d at p. 471].)

Thus, as a general matter, double jeopardy principles would not preclude defendant's retrial on the murder charge despite the earlier reversal, and the murder conviction would be allowed to stand even if inconsistent with the not true finding on the use enhancement.

■ Defendant does not quarrel with these principles but, relying on the doctrine of collateral estoppel,[2] he argues that the knife-use finding precludes retrial of the murder charge on the theory that he used a knife. For

---

[2]The doctrine is sometimes called "issue preclusion." (E.g., *Schiro* v. *Farley* (1994) 510 U.S. __, __ [127 L.Ed.2d 47, 58, 114 S.Ct. 783, 790].) We will refer to it as "collateral estoppel," as has been our practice. (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 848-849 [25 Cal.Rptr.2d 500, 863 P.2d 745]; *People* v. *Howard* (1988) 44 Cal.3d 375, 411 [243 Cal.Rptr. 842, 749 P.2d 279].)

support, he cites *Pettaway* v. *Plummer* (9th Cir. 1991) 943 F.2d 1041 and *People* v. *White* (1986) 185 Cal.App.3d 822 [231 Cal.Rptr. 569], which agreed with this contention under substantially similar facts. He contends that a contrary decision, *People* v. *Pettaway* (1988) 206 Cal.App.3d 1312 [254 Cal.Rptr. 436], was wrongly decided.

■ " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (*Ashe* v. *Swenson, supra*, 397 U.S. at p. 443 [25 L.Ed.2d at p. 475] (*Ashe*).) In *Ashe*, six men playing poker were robbed. The defendant was tried for robbing one of the six. The only disputed issue was defendant's identity as one of the robbers. A jury acquitted him. He was then tried for robbing a second poker player. This time, a different jury convicted. Although, under strict application of double jeopardy law, the robbery of one victim was a distinct offense from the robbery of another (see *Brown* v. *Ohio* (1977) 432 U.S. 161, 167, fn. 6 [53 L.Ed.2d 187, 195, 97 S.Ct. 2221]), the high court found the successive trials violated the collateral estoppel rule, which it found "is embodied in the Fifth Amendment guarantee against double jeopardy." (*Ashe, supra*, 397 U.S. at p. 445 [25 L.Ed.2d at p. 476].)[3]

The high court stated that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' [Fn. omitted.] The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon* v. *United States*, 332 U.S. 575, 579 [92 L.Ed. 180, 184-185, 68 S.Ct. 237]." (*Ashe, supra*, 397 U.S. at p. 444 [25 L.Ed.2d at pp. 475-476].)

With this background, we consider, first, whether collateral estoppel applies to retrial in the same proceeding of a charge of which the jury had

---

[3]Collateral estoppel, which applies to relitigation of factual *issues*, is analytically distinct from double jeopardy, which applies to retrial of *offenses*. Thus, collateral estoppel is conceptually separate from double jeopardy, but, under *Ashe, supra*, 397 U.S. 436, when applicable, it is a component of the double jeopardy clause of the Fifth Amendment.

*convicted* the defendant, and, second, whether, if so, the elements of collateral estoppel have been met in this case.

### B. *Applicability of Collateral Estoppel to Retrial of Charges of Which the Defendant Had Been Convicted*

*Ashe, supra*, 397 U.S. 436, involved successive prosecutions. Defendant was charged only with the first robbery. When that prosecution failed, the second was charged. The *Ashe* court stated that the collateral estoppel doctrine prevented relitigation of an ultimate fact "between the same parties *in any future lawsuit*." (*Id.* at p. 443 [25 L.Ed.2d at p. 475], italics added.) Here, of course, we do not confront a future lawsuit, but retrial in the same one.

The high court has never suggested the doctrine applies to the same proceeding. Indeed, it has consistently stated it applies to "successive prosecutions." (*Brown* v. *Ohio, supra*, 432 U.S. at p. 167, fn. 6 [53 L.Ed.2d at p. 195].) In *Ohio* v. *Johnson* (1984) 467 U.S. 493, 500, footnote 9 [81 L.Ed.2d 425, 434, 104 S.Ct. 2536], the court specifically stated, "Moreover, in a case such as this, where the State has made no effort to prosecute the charges seriatim, the considerations of double jeopardy protection implicit in the application of collateral estoppel are inapplicable." In *United States* v. *Dixon* (1993) 509 U.S. __ [125 L.Ed.2d 556, 113 S.Ct. 2849], a case involving successive prosecutions, the high court, although expressly not deciding the collateral estoppel question in that case because the lower courts had not ruled on it (*id.* at p. __, fn. 17 [125 L.Ed.2d at p. 578, 113 S.Ct. at p. 2864]), noted at page __ [125 L.Ed.2d at pp. 572-573, 113 S.Ct. at p. 2860] that "[t]he collateral-estoppel effect attributed to the Double Jeopardy Clause, see *Ashe* v. *Swenson*, 397 U.S. 436 [25 L.Ed.2d 469, 90 S.Ct. 1189] (1970), may bar a *later prosecution* for a separate offense where the Government has *lost* an earlier prosecution involving the same facts." (First italics in original, second italics added.) Most recently, the court has stated, "Where . . . there is 'no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended.' [Citation.] Thus, our cases establish that the primary evil to be guarded against is successive prosecutions: '[T]he prohibition against multiple trials is the controlling constitutional principle.' [Citation.]" (*Schiro* v. *Farley, supra*, 510 U.S. at p. __ [127 L.Ed.2d at pp. 56-57, 114 S.Ct. at p. 789].)

In the face of this, we question whether collateral estoppel applies to the *same* proceeding where the government *won* by securing a conviction of the substantive count. The policies behind the doctrine do not clearly support its application to a retrial of that count. In *Ashe, supra*, 397 U.S. at

page 446 [25 L.Ed.2d at pages 476-479], the court attached the doctrine to the double jeopardy clause because that clause "surely protects a man who has been acquitted from having to 'run the gantlet' a second time. [Citation.]" Here, defendant was convicted, not acquitted, of the murder charge. Retrial after reversal is not the sort of "governmental oppression" protected by the double jeopardy clause. (*United States* v. *Scott, supra,* 437 U.S. at p. 91 [57 L.Ed.2d at p. 74].)

■ In *People* v. *Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622], we stated "the purposes of an application of the doctrine to be: (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Accord, *People* v. *Howard, supra,* 44 Cal.3d at p. 412.) ■ None of these purposes apply here. This is the same action, not repetitive litigation; a murder conviction by the second jury would be consistent, not inconsistent, with the original verdict; and retrial following reversal is not "vexatious litigation."

Defendant relies on *Bullington* v. *Missouri* (1981) 451 U.S. 430 [68 L.Ed.2d 270, 101 S.Ct. 1852] and *Arizona* v. *Rumsey* (1984) 467 U.S. 203 [81 L.Ed.2d 164, 104 S.Ct. 2305], where the United States Supreme Court held that double jeopardy barred imposition of the death penalty at retrial after the state had failed to obtain the death penalty at the first trial. "Both *Bullington* and *Rumsey* were capital cases, and our reasoning in those cases was based largely on the unique circumstances of a capital sentencing proceeding." (*Caspari* v. *Bohlen* (1994) 510 U.S. __, __ [127 L.Ed.2d 236, 247, 114 S.Ct. 948, 954.) Assuming the rationale of these cases applies to other sentencing decisions such as the enhancement finding here (an issue the high court expressly did not decide in *Caspari* v. *Bohlen, supra,* 510 U.S. at p. __ [127 L.Ed.2d at pp. 250-251, 114 S.Ct. at p. 957]), at most that would preclude retrial of the enhancement allegation, which, as noted, the parties agree cannot occur here.[4] Nothing in those decisions suggests that sentencing decisions affect retrial of a substantive offense of which the jury had found the defendant guilty.

Defendant seems to agree that if the original split verdict had been inherently inconsistent, that is, if it were factually impossible for the jury to convict on one count and yet acquit on another or find an enhancement

---

[4]One reason for this is the impropriety of penalizing a defendant for appealing, which would have a chilling effect on the exercise of that right. (*People* v. *Pettaway, supra,* 206 Cal.App.3d at pp. 1331-1332.) This reason does not apply to retrial of the substantive charges. Defendant was convicted of those charges, so cannot be worse off for having appealed.

allegation not true, then collateral estoppel would not apply. This necessarily flows from the acceptance in *United States* v. *Powell, supra,* 469 U.S. 57 of inconsistent verdicts. As the court in *Powell* noted, "The problem is that the same jury reached inconsistent results; once that is established principles of collateral estoppel—which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful." (*Id.* at p. 68 [83 L.Ed.2d at p. 471]; see also *Pettaway* v. *Plummer, supra,* 943 F.2d at pp. 1045-1046.)

Defendant argues, however, that what applies to an inconsistent verdict does not apply to a verdict that might have a rational basis. This may be correct, but it would be odd if a conviction that is clearly inconsistent with an acquittal or not true finding may be retried without constraint after an appellate reversal, but a conviction that may, in theory at least, be reconciled with another verdict would, as here, be significantly affected by that verdict following a similar reversal.

The not true finding may be explained by "mistake, compromise, or lenity" (*United States* v. *Powell, supra,* 469 U.S. at p. 65 [83 L.Ed.2d at p. 468]) or "confusion or ennui." (*People* v. *Pettaway, supra,* 206 Cal.App.3d at p. 1325.) Moreover, in the first appeal, the Court of Appeal found an 11-day continuance during jury deliberations "undoubtedly had some significant effect on jurors' ability to remember complicated facts, as well as on their recall and understanding of instructions." (*People* v. *Santamaria, supra,* 229 Cal.App.3d at p. 282.) The continuance might have adversely affected the enhancement verdict as well as the murder conviction.

For these reasons, the high court might well not apply *Ashe, supra,* 397 U.S. 436, to a retrial of a count the jury had convicted the defendant of in the same action. But that court has not decided the issue in a case like this. In *Schiro* v. *Farley, supra,* 510 U.S. at page __ [127 L.Ed.2d at p. 58, 114 S.Ct. at p. 790], the court did "not address whether collateral estoppel could bar use of the 'intentional' murder aggravating circumstance, because Schiro has not met his burden of establishing the factual predicate for the application of the doctrine, *if it were applicable,* namely that an 'issue of ultimate fact has once been determined' in his favor." (Italics added.) Some federal courts have found that *Ashe* does apply to a retrial. (E.g., *U.S.* v. *Bailin* (7th Cir. 1992) 977 F.2d 270, 275-280; *Pettaway* v. *Plummer, supra,* 943 F.2d 1041.)[5] Under these circumstances, and because, as explained in the next part,

---

[5]*U.S.* v. *Bailin, supra,* 977 F.2d 270, contains the most extensive discussion of the applicability of collateral estoppel to retrial, and concludes that it does apply. That case might be distinguishable because, unlike here, it did not concern a retrial of a conviction reversed on appeal, but rather retrial of counts the first jury could not agree upon, a factor that plays a

defendant's collateral estoppel claim can be rejected on the merits, "we do not reach the issue of whether the doctrine of collateral estoppel is limited, like its parent doctrine of double jeopardy, only to successive prosecutions." (*U.S.* v. *Farmer* (11th Cir. 1991) 923 F.2d 1557, 1563, fn. 12.)

Instead, we will follow the lead of the high court in *Schiro* v. *Farley*, *supra*, 510 U.S. __ [127 L.Ed.2d 47, 114 S.Ct. 783], and proceed to examine whether, assuming the doctrine of collateral estoppel can apply to a retrial such as this, the necessary elements of the doctrine have been satisfied.

## C. *Whether the Elements of Collateral Estoppel Have Been Satisfied*

■ Different courts have articulated the requirements for collateral estoppel differently. The United States Supreme Court has made clear that the issue to be precluded must be "an issue of ultimate fact" that "has once been determined by a valid and final judgment" (*Ashe*, *supra*, 397 U.S. at p. 443 [25 L.Ed.2d at p. 475]; see also *Schiro* v. *Farley*, *supra*, 510 U.S. at p. __ [127 L.Ed.2d at pp. 58-59, 114 S.Ct. at p. 790]), and that the defendant has the burden of showing that the issue "was actually decided in the first proceeding." (*Dowling* v. *United States* (1990) 493 U.S. 342, 350 [107 L.Ed.2d 708, 718-719, 110 S.Ct. 668], quoted in *Schiro* v. *Farley*, *supra*, 510 U.S. at p. __ [127 L.Ed.2d at pp. 58-59, 114 S.Ct. at p. 791].)

We have generally applied collateral estoppel "if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; if (2) the previous trial resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial." (*People* v. *Taylor*, *supra*, 12 Cal.3d at p. 691; see also *Gikas* v. *Zolin*, *supra*, 6 Cal.4th at p. 849.)

The United States Court of Appeals for the Ninth Circuit has stated, "Collateral estoppel analysis involves a three-step process: '(1) An identification of the issues in the two actions for the purpose of determining

substantial role in the court's analysis. Moreover, the *Bailin* court relied heavily on civil decisions in concluding that collateral estoppel, or, as it analyzed it, " 'direct estoppel,' " applied. (*Id.* at p. 276.) But in a decision refusing to apply the civil doctrine of "nonmutual collateral estoppel" to a criminal case, the United States Supreme Court has made clear that civil rules do not necessarily apply to criminal cases. "This, however, is a criminal case, presenting considerations different from those in [the civil cases defendant relied upon]." (*Standefer* v. *United States* (1980) 447 U.S. 10, 22 [64 L.Ed.2d 689, 699, 100 S.Ct. 1999].) Among the different considerations the high court cited are the inability of the prosecution to obtain a directed verdict, judgment notwithstanding the verdict, or a new trial no "matter how clear the evidence in support of guilt," or to appeal an adverse judgment, circumstances which permit juries "to acquit out of compassion or compromise" or lenity. (*Ibid.*)

We need not inquire further into the correctness of this portion of *Bailin*, however, in light of our conclusion in the next part, bolstered by the analysis of *Bailin* itself, that defendant has not shown that the elements of collateral estoppel have been met.

whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.' " (*Pettaway* v. *Plummer, supra,* 943 F.2d at pp. 1043-1044, quoting *United States* v. *Hernandez* (9th Cir. 1978) 572 F.2d 218, 220.)

██ We need not determine whether there are, or seek to reconcile, any substantive differences between these formulations, for defendant's argument fails under any of them.[6] Collateral estoppel does not apply for two reasons: (1) the issue sought to be precluded in the murder trial is not identical to any issue necessarily decided by the weapon enhancement verdict; and (2) whether defendant used a knife is not an "ultimate issue" of the murder charge.

### 1. *Identical Issue*

The issue sought to be precluded at retrial is not identical to any necessarily decided by the enhancement verdict. As defendant stresses, the jury returned an "express acquittal" of the enhancement allegation. (*People* v. *Superior Court* (*Marks*), *supra,* 1 Cal.4th at p. 78, fn. 22.) But it also returned an express *conviction* of the murder and robbery charges. The pertinent issue decided by each verdict was quite different.

To see why this is so, we turn to state law, the proper source for determining the meaning of the jury's verdicts and whether the issues are identical. (*Delap* v. *Dugger* (11th Cir. 1989) 890 F.2d 285, 315.) Murder is

---

[6]The parties focus primarily on the federal constitutional standard, and not on whether the state standard is significantly different. In *People* v. *Taylor, supra,* 12 Cal.3d 686, we afforded a defendant greater collateral estoppel protection than the high court later required under the United States Constitution. (See *Standefer* v. *United States, supra,* 447 U.S. 10.) Even if we assume that the state collateral estoppel elements are broader than required under the United States Constitution, that would not aid defendant. The state law doctrine of collateral estoppel has a public policy exception. (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 342-343 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) That exception applies here.

The challenged theory of knife use and supporting evidence has already once validly helped produce a conviction of murder, and the murder charge is properly retriable following a reversal on appeal. To allow an ancillary *sentencing* determination in the prior trial to govern what theories and evidence are available in a *guilt* retrial would not advance "the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation . . . ." (*Lucido* v. *Superior Court, supra,* 51 Cal.3d at p. 343; see also *id.* at p. 351.) Moreover, telling the jury defendant did not use the knife, despite the evidence that he did, would undermine confidence in the truth-seeking function of the judicial system, and discourage the legitimate charging of enhancements.

the substantive offense. The allegation of knife use was merely a sentence enhancing allegation attached to the murder charge. The requirements for murder and for the enhancing allegation are significantly different. █ The weapon enhancement under Penal Code section 12022, subdivision (b), requires personal use, i.e., the jury must find beyond a reasonable doubt that defendant personally used the knife to find the enhancement true. (*People* v. *Cole* (1982) 31 Cal.3d 568, 579 [183 Cal.Rptr. 350, 645 P.2d 1182].) █ Murder, however, like any substantive offense, need not be personal; an aider and abettor of the actual killer is equally guilty. (*People* v. *Montoya* (1994) 7 Cal.4th 1027, 1038-1039 [31 Cal.Rptr.2d 128, 874 P.2d 903]; *People* v. *Beeman* (1984) 35 Cal.3d 547, 554-555 [199 Cal.Rptr. 60, 674 P.2d 1318].)

█ This is unremarkable. Defendant fully understands this, as did the Ninth Circuit. (*Pettaway* v. *Plummer, supra,* 943 F.2d at p. 1044.) Both argue this proves that the jury's verdict was not necessarily inconsistent. The jury, defendant argues, and the Ninth Circuit agreed, may have found he was an aider and abettor; this would allow the jury to convict of murder but would require the not true verdict on the enhancement allegation. (*Id.* at p. 1046.) If one stops there, the argument has appeal: if the jury found defendant did not use a knife, it must have found he was an aider and abettor. But this merely begins the inquiry; it does not end it. Defendant wrings far more meaning from the verdict than is warranted under California law.

At trial, there was much evidence defendant was involved in the murder, including the evidence that he helped pawn the victim's jewelry. The only eyewitness to the killing was Nubla, an admitted accessory. His testimony minimized his own role. The jury may well have doubted that he was quite so innocent in the killing as he claimed. It might have suspected that he was involved in inflicting at least some of the injuries. It might, for example, have suspected that one person, either defendant or Nubla, strangled the victim, while the other stabbed him. This would lead to a reasonable doubt as to defendant's personal use of a knife, but would suffice for the verdict of guilty of murder.

We now look more closely at California law. █ It is settled that as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is defined by statute, it need not decide unanimously by which theory he is guilty. (*People* v. *Pride* (1992) 3 Cal.4th 195, 249-250 [10 Cal.Rptr.2d 636, 833 P.2d 643]; *People* v. *Milan* (1973) 9 Cal.3d 185, 194-195 [107 Cal.Rptr. 68, 507 P.2d 956].) More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator. (*People* v. *Beardslee* (1991) 53

Cal.3d 68, 92 [279 Cal.Rptr. 276, 806 P.2d 1311]; *People* v. *Forbes* (1985) 175 Cal.App.3d 807, 816-817 [221 Cal.Rptr. 275].) This rule of state law passes federal constitutional muster. (*Schad* v. *Arizona* (1991) 501 U.S. 624 [115 L.Ed.2d 555, 111 S.Ct. 2491].)

██ Defendant is not particularly troubled by this. He argues that the jury did reach a unanimous verdict; it unanimously found the knife-use allegation not true. This is correct, but is of far less significance than defendant contends. It shows only that there was a reasonable doubt in the minds of the jurors that defendant specifically used a knife. *It does not show the reverse, that the jury specifically found defendant was an aider and abettor.* Indeed, under the facts of this case, such a finding is most unlikely. The jury may merely have believed, and most likely did believe, that defendant was guilty of murder as either a personal knife user or an aider and abettor but *it may have been uncertain exactly which role defendant played.* That, too, would fully explain, and necessitate, the split verdict.[7]

██ Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. Sometimes, as probably occurred here, the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other.

This is illustrated by *People* v. *Garrison* (1989) 47 Cal.3d 746 [254 Cal.Rptr. 257, 765 P.2d 419]. There the jury found the defendant guilty of murder and other offenses, but failed to reach a verdict as to personal use allegations. (*Id.* at p. 766.) The defendant argued this proved the jury found he aided and abetted a prosecution witness, one Roelle. We disagreed, noting that although Roelle testified that defendant was the triggerman, "there was other evidence from which the trier of fact could reasonably have inferred that defendant and Roelle were jointly involved in the commission of the offenses." (*Id.* at p. 781.) We thus concluded that "it may be inferred that the jury determined that both Roelle and defendant were jointly involved in the

---

[7]The factual issue is actually more complicated than this. Three types of injury were inflicted: the victim was stabbed, he was strangled, he was run over by a car. Although the district attorney stated the cause of death was stabbing, the jury may have been less certain. It may have been convinced beyond a reasonable doubt defendant was the stabber, or strangler, or car driver, or an aider and abettor of the stabber, strangler or driver, or some combination thereof, but have been uncertain as to his precise personal role. This, too, would explain and justify the not true finding and guilty verdict. The parties, however, focus on the dichotomy between defendant as the knife user and defendant as an aider and abettor, so we will also. The analysis is the same under any of these scenarios.

criminal activity but could not decide beyond a reasonable doubt which one had pulled the trigger." (*Id.* at p. 782.)[8]

Similarly, the jury here may not have been able to decide beyond a reasonable doubt whether defendant or Nubla actually wielded the knife, but was convinced beyond a reasonable doubt that, either way, defendant was guilty of Guadron's murder. To go further and conclude that the jury *specifically* found defendant did not use the knife would not apply the collateral estoppel rule with "realism and rationality." (*Ashe, supra,* 397 U.S. at p. 444 [25 L.Ed.2d at p. 475].)

This shows that the issue necessarily decided by the knife-use verdict and the issue sought to be precluded in the murder prosecution are not identical, but quite different. Although defendant claims he merely seeks to preclude the theory that he used the knife, he necessarily is claiming more; he seeks to preclude the theory, and evidence to support the theory, that he *either* used the knife *or* aided and abetted the one who did. This, however, is not the issue decided regarding the enhancement allegation. Whether defendant specifically used a knife is one question; we may assume the prosecution did not prove that beyond a reasonable doubt, which explains the not true enhancement verdict. Whether defendant committed murder by either using a knife or aiding and abetting the one who did is quite a different question; the prosecution *did* prove that to the jury's satisfaction.

It is theoretically possible the jury concluded defendant was specifically the aider and abettor, despite the paucity of supporting evidence. But that is not the test. Setting the inquiry " 'in a practical frame' " and viewing it " 'with an eye to all the circumstances of the proceedings' " (*Ashe, supra,* 397 U.S. at p. 444 [25 L.Ed.2d at p. 476]), we conclude the jury did not " 'necessarily decide[]' " (*Pettaway* v. *Plummer, supra,* 943 F.2d at p. 1044; *People* v. *Taylor, supra,* 12 Cal.3d at p. 691) that defendant was the aider and abettor, only that it had doubts as to his exact role. Defendant has the burden of showing that the issue he seeks to foreclose was actually decided by the

---

[8]In analyzing the unanimity question in a robbery case, one Court of Appeal used this example. " 'Assume a robbery with two masked participants in a store, one as the gunman and one as the lookout. If one witness makes a voice identification of the defendant as the gunman who demanded money, but other evidence, such as a fingerprint, suggests the defendant was actually holding the door open as lookout, the jury would be faced with the same theories presented in this case: find the defendant was the gunman and therefore a direct perpetrator, or find he was at the door and therefore an aider and abettor. Either way he would be guilty of robbery.' If 12 jurors must agree on the role played by the defendant, the defendant may go free, even if the jurors all agree defendant committed the crime. That result is absurd." (*People* v. *Perez* (1993) 21 Cal.App.4th 214, 222 [26 Cal.Rptr.2d 691].) Equally absurd would be to let the defendant go free because each individual juror had a reasonable doubt as to his exact role.

jury. (*Schiro* v. *Farley*, *supra*, 510 U.S. at p. __ [127 L.Ed.2d at pp. 58-59, 114 S.Ct. at p. 791].) This he cannot do.[9]

### 2. *Ultimate Fact*

Another fallacy in defendant's argument is exposed by examining the requirement that the issue to be foreclosed be of "ultimate fact." (*Ashe*, *supra*, 397 U.S. at p. 443 [25 L.Ed.2d at p. 475].) Identity of the defendant in *Ashe* as one of the robbers was clearly an ultimate fact; it had to be proven beyond a reasonable doubt for him to be found guilty of that robbery no matter what the rest of the evidence showed. Knife use is just as clearly an ultimate fact as to the use enhancement. But it is not an ultimate fact of *murder*.

In *Dowling* v. *United States*, *supra*, 493 U.S. 342, during the trial for one crime, the prosecution presented evidence of another crime for which the defendant had previously been tried and acquitted. The defendant argued this violated the collateral estoppel rule of *Ashe*. The high court disagreed "because, unlike the situation in *Ashe* v. *Swenson*, the prior acquittal did not determine an ultimate issue in the present case." (*Dowling* v. *United States*, *supra*, 493 U.S. at p. 348 [107 L.Ed.2d at p. 717].) The court "assume[d] for the sake of argument that Dowling's acquittal established that there was a reasonable doubt as to whether Dowling was the [man who entered the house where the other crime was committed]." (*Ibid.*) But the court noted that the prosecution did not have to prove that fact beyond a reasonable doubt for the evidence to be admissible at the second trial; thus, "the collateral-estoppel component of the Double Jeopardy Clause is inapposite." (*Id.* at p. 349 [107 L.Ed.2d at p. 718].)

*Dowling* involved separate prosecutions, not a retrial. Two recent decisions that, like this case, did involve a retrial analyzed the relevance of

---

[9]Another hypothetical illustrates why the issue as to the enhancement and that as to the substantive charge should not be deemed identical for collateral estoppel purposes. Assume a convenience store holdup with two masked robbers and five eyewitnesses, and that all witnesses testified that robber A had a gun. Two witnesses also thought robber B had a gun, but the others did not see it. Assume the two defendants are tried together. Both left fingerprints, and both confessed to participation in the crime, but each denied possessing a gun, and claimed the other had the gun. The testimony of two witnesses that both robbers had a gun would justify charging a gun enhancement as to both. So both would be tried together for robbery and personal gun use. If the jury had a reasonable doubt that both used a gun, and did not know which was robber A and which robber B, it could reasonably find both guilty of robbery but would have to find the enhancement allegation not true as to *both*.

If the convictions were reversed on appeal for extraneous reasons, at retrial would the court have to instruct the jury that *neither* used a gun? Or that the jury could not convict on the basis that either used the gun? That would be absurd. The first jury would have found both guilty as either the gun user or on some other basis, but would have been uncertain as to exactly who did what. A second jury should be allowed to do the same.

*Dowling* to this situation. They independently reached the same conclusion, a conclusion fatal to defendant's position.

The first decision, *U.S.* v. *Seley* (9th Cir. 1992) 957 F.2d 717, 723, noted that "*Dowling* did not alter *Ashe* so much as it introduced a new perspective on the meaning of the 'ultimate fact' decided in the first trial. ██ *Instead of meaning that certain acts did not happen, an acquittal means that they were not proved beyond a reasonable doubt.* If an act that could have been proved to a lesser degree than that required for conviction is for some reason probative in a subsequent trial, it need not be excluded because of the prior acquittal." (Italics added.) The second decision, *U.S.* v. *Bailin*, *supra*, 977 F.2d at page 280, stated, "*Dowling* thus establishes that issue preclusion in criminal cases only applies when the relevant issue is 'ultimate' in the subsequent prosecution, i.e., when the issue must be proven beyond a reasonable doubt."

██ These cases confirm that the jury's not true finding on the enhancement allegation does not mean defendant did not use the knife, only that there was a reasonable doubt that he did. In *Ashe*, the verdict, viewed realistically, showed the jury had a reasonable doubt as to the defendant's identity as the robber. That doubt necessarily precluded conviction of the robbery charge. But the same doubt as to knife use did not preclude a murder conviction here, although it did mandate a not true enhancement finding.

Evidence that defendant personally used a knife was highly relevant to show that he was guilty of murder as that offense is defined by statute. That evidence, *together with the evidence that if he did not use a knife, he was guilty as the aider and abettor*, combined to permit the murder conviction. But the specific fact of personal use does *not* have to be proven beyond a reasonable doubt to find defendant guilty of murder. Hence, personal use is not an "ultimate fact" of murder.

We thus hold that collateral estoppel does not apply. We disapprove of the contrary conclusion of *People* v. *White, supra*, 185 Cal.App.3d 822.[10]

---

[10]Justice Mosk agrees that the People "could attempt to prove that [defendant] was guilty, as it were, 'unspecifically,' that is, that although his precise role could not be determined, he was *either* a direct and active perpetrator *or* an aider and abettor." (Conc. and dis. opn. of Mosk, J., *post*, at pp. 932-933, italics in original.) His only disagreement with the majority is his argument the trial court has to instruct that the jury "could not find that defendant was guilty as a principal as a direct and active perpetrator *solely through his personal use of a knife*." (*Id.* at p. 935, italics in original.) As Justice Mosk notes, his analysis "yields little real benefit to defendant." (*Id.* at p. 933.) Indeed, except for possibly confusing the jury, the proffered instruction would offer *no* real benefit to defendant. A jury that could find

### D. *Pettaway v. Plummer*

*People* v. *Pettaway*, *supra*, 206 Cal.App.3d 1312, involved virtually the same issue and procedural posture as this case, except that there the weapon enhancement that the jury found not true was for use of a firearm, not a knife. The holding of the Court of Appeal was consistent with our decision today, i.e., a judgment dismissing a murder charge was reversed. The defendant, Pettaway, however, sought relief on habeas corpus from the federal courts, making the same argument defendant makes here. The court in *Pettaway* v. *Plummer*, *supra*, 943 F.2d 1041, agreed with the defendant, disagreed with the Court of Appeal decision, granted habeas corpus relief, and prohibited retrial.

■ We thus have the situation that, although normally federal circuit court decisions are not binding on this court (*Lockhart* v. *Fretwell* (1993) 506 U.S. __, __ [122 L.Ed.2d 180, 193-194, 113 S.Ct. 838, 846] (conc. opn. of Thomas, J.), and authority cited therein; *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 352 [276 Cal.Rptr. 326, 801 P.2d 1077]), here they have the power to effectively overrule our decision.

We believe the court in *Pettaway* v. *Plummer*, *supra*, 943 F.2d 1041, misunderstood the relevant state law. Noting that once the jury found the defendant guilty of murder, it was "*required*" to "reach the question of personal use of the handgun" in deciding the enhancement allegation (*id.* at p. 1045, italics by the court), the court disagreed with the federal district

---

defendant was either a direct perpetrator or an aider and abettor would have no need to determine that he was solely guilty as a knife user. But contrary to Justice Mosk's view (*id.* at p. 933), defendant has both sought and obtained much more. In the trial court, he moved to exclude, among other things, Nubla's testimony that he saw "defendant stab the victim." The trial court ruled that it would periodically instruct the jury that defendant "did not personally use a knife during the killing of the victim." Thus, depending on the evidentiary rulings the court would make at trial, either the court would tell the jury the main prosecution witness was lying, or the jury would hear no mention of who stabbed the victim, a critical matter since it would also hear that the cause of death was a stab wound. Justice Mosk impliedly agrees the evidentiary contention was meritless, and expressly agrees the instructional ruling was error. (*Id.* at p. 934.) The ruling gave defendant a *real* benefit, and made conviction unrealistic, especially since the special circumstance allegation required a finding that defendant personally intended to kill. (See *People* v. *Duncan* (1991) 53 Cal.3d 955, 973, fn. 4 [281 Cal.Rptr. 273, 810 P.2d 131].)

We disagree that the court had to give the jury any special instruction. The jury returns a verdict of guilt or innocence of the *charge*, not a verdict on any particular theory. Although knife use is an ultimate fact of one possible *theory*, that is not the test; knife use is not an ultimate fact of the charge of murder, the only question the jury has to decide. It would be absurd, and would only confuse the jury, to instruct that it could convict defendant if it thought him guilty on some valid theory, even if uncertain which, but could not convict him if it specifically believed he used the knife. For the reasons stated in the text, collateral estoppel simply does not apply here.

court's analysis that the jury might have determined " 'that [Pettaway] either personally shot [the victim] or aided and abetted in her killing without deciding between the two alternatives.' " (*Id.* at p. 1044.) But this misses the point. The pertinent question is not *did* the jury decide whether defendant personally used the weapon, but rather *could* it make such a determination beyond a reasonable doubt. The inability of the jury to make that determination, because of a doubt as to defendant's precise role in the crime, would require the jury to find the enhancing allegation not true. But a determination that defendant either used the weapon or aided and abetted the one who did sufficed to permit the murder verdict.

The court also stated that "the specific finding that [defendant] did not personally use a firearm was not inconsistent with the conviction; rather, it was as if the jury had issued a special verdict to that effect *regarding the substantive offense.*" (*Pettaway* v. *Plummer*, *supra*, 943 F.2d at p. 1046, italics added.) However, as discussed above, the jury does not make any special verdict "regarding the substantive offense." A combination of theories is sufficient.

The court went on. "Pursuant to California law, Pettaway's use of the handgun was pleaded and tried to the jury. The jury necessarily decided that Pettaway did not fire the fatal shots." (*Pettaway* v. *Plummer*, *supra*, 943 F.2d at p. 1046.) The first sentence of the quoted language is correct, but the second is not. The jury merely found there was reasonable doubt on the question. (See *Dowling* v. *United States*, *supra*, 493 U.S. at p. 348 [107 L.Ed.2d at pp. 717-718]; *U.S.* v. *Bailin*, *supra*, 977 F.2d at p. 280; *U.S.* v. *Seley*, *supra*, 957 F.2d at p. 723, discussed above.)

The *Pettaway* court "barred reprosecution on a theory the prosecution had tried and failed to prove before." (*Pettaway* v. *Plummer*, *supra*, 943 F.2d at p. 1047.) However, as explained above, the prosecution need not prosecute the case on a particular theory; it need only prove defendant guilty on *any* sufficient theory, which it did successfully "prove before."

The court also said, "If the state is allowed to proceed on the theory that Pettaway pulled the trigger himself, it is possible that the second jury would convict Pettaway by reaching a conclusion directly contrary to that reached by the jury in the first trial." (*Pettaway* v. *Plummer*, *supra*, 943 F.2d at p. 1047.) This is also incorrect. The first jury convicted the defendant of murder, finding he was either the direct perpetrator or the aider and abettor. If the second jury does the same, the verdicts would be consistent, not inconsistent. The jury will never have to decide what defendant's precise role was. Thus, a second *conviction* of murder, should it occur, could never

be inconsistent with the first. The only danger of inconsistency would be if the second jury *acquitted* defendant of the crime the first found him guilty of committing.

The court argued " 'that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense,' " and that "[a]llowing the state to reprosecute Pettaway for murder on the theory that he was the actual perpetrator of the murder permits the state to remedy the flaws it perceives as having been fatal to its case the first time, and to attempt to convince a second jury of that which it tried and failed to prove to the first jury." (*Pettaway* v. *Plummer*, *supra*, 943 F.2d at p. 1048, quoting *Green* v. *United States* (1957) 355 U.S. 184, 187 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119].) However, nothing was "fatal" to the murder case the first time. The jury found defendant guilty of that crime. The prosecution need not "remedy any flaws"; it only needs the opportunity to prove its case to the second jury just as it did to the first, an opportunity *Pettaway* v. *Plummer*, *supra*, 943 F.2d 1041, would deny.

Moreover, the court relied substantially on the decision of *Grady* v. *Corbin* (1990) 495 U.S. 508 [109 L.Ed.2d 548, 110 S.Ct. 2084], stating that the two cases presented "essentially the same situation." (*Pettaway* v. *Plummer*, *supra*, 943 F.2d at p. 1047; see also *id.* at p. 1046.) The high court subsequently overruled the very portion of *Grady* v. *Corbin* that was relied upon. (*United States* v. *Dixon*, *supra*, 509 U.S. at p. __ [125 L.Ed.2d at pp. 572-573, 577-578, 113 S.Ct. at pp. 2860, 2864]; compare the language quoted and overruled, *id.* at p. __ [125 L.Ed.2d at pp. 572-573, 113 S.Ct. at p. 2860] with the language quoted in *Pettaway* v. *Plummer*, *supra*, 943 F.2d at p. 1047.)

The result of *Pettaway* v. *Plummer*, *supra*, 943 F.2d 1041, unduly hampers prosecution of crimes involving weapons. A jury convinced that the defendant is guilty, although uncertain as to the precise role he or she played, may validly convict of the crime and simultaneously find a weapon enhancement not true; but if for any reason the judgment is reversed on appeal, retrial might be rendered effectively impossible, or at least very difficult, under that decision. Thus, charging weapon enhancements becomes risky. Here, for example, the jury found defendant guilty of murder with special circumstances. Now, because of the relatively insignificant enhancement allegation and the intervening appellate reversal, the charges have been dismissed. Defendant will go free if that dismissal stands, despite the evidence that convinced the first jury that he was, in fact, guilty as either the actual killer or an aider and abettor.

Because of this, we urge the federal courts to reconsider that decision if and when the issue is again before them in light of our analysis of state law

and the subsequent decisions of *Caspari* v. *Bohlen, supra*, 510 U.S. __ [127 L.Ed.2d 236, 114 S.Ct. 948]; *Schiro* v. *Farley, supra*, 510 U.S. __ [127 L.Ed.2d 47, 114 S.Ct. 783]; *United States* v. *Dixon, supra*, 509 U.S. __ [125 L.Ed.2d 556, 113 S.Ct. 2849]; *U.S.* v. *Bailin, supra*, 977 F.2d 270; and *U.S.* v. *Seley, supra*, 957 F.2d 717.

### E. *Summary*

■ The first jury, having heard and considered all the evidence, properly convicted defendant of murder even though it had a reasonable doubt who actually wielded the knife. The second jury should be allowed to do the same. A reasonable doubt that defendant used the knife precluded the use enhancement; it did not prevent conviction of murder at the first trial on the combined theory that he *either* used the knife *or* aided and abetted the one who did. It should not preclude conviction at retrial on the same basis. Transforming a conviction into an effective acquittal because of the fortuity of an intervening reversal, as happened here, violates the mandate of *Ashe, supra*, 397 U.S. at p. 444 [25 L.Ed.2d at pp. 475-476], that collateral estoppel be applied with "realism and rationality."

"The state is entitled to 'one fair opportunity' to prosecute a defendant . . . ." (*Schiro* v. *Farley, supra*, 510 U.S. at p. __ [127 L.Ed.2d at p. 58, 114 S.Ct. at p. 790], quoting *Bullington* v. *Missouri, supra*, 451 U.S. at p. 446 [68 L.Ed.2d at pp. 283-284].) In *Ashe, supra*, 397 U.S. 436, the prosecution was given one fair opportunity to prove the defendant was one of the robbers; it failed, and was not entitled to try again. Here, the prosecution *did* prove to the jury's satisfaction that defendant was guilty. It should be allowed to do so again following reversal on appeal. To require the prosecution to specifically prove defendant was the aider and abettor, and *not* the knife user— which it did not have to prove to obtain the first conviction—would deny it that fair opportunity to prosecute defendant.

For these reasons, the trial court erred in its ruling on defendant's collateral estoppel motion, and in dismissing the case when the prosecution announced an inability to proceed in light of that ruling. The matter should be remanded to the trial court with instructions to reinstate the charges and proceed in a manner consistent with the views expressed herein.

### III. Disposition

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Baxter, J., George, J., and Puglia, J.,* concurred.

**MOSK, J.,** Concurring and Dissenting.—I concur in the judgment insofar as it would allow retrial. The "collateral estoppel" component of the double jeopardy clause of the Fifth Amendment to the United States Constitution does not immunize defendant from further proceedings. The majority are right to so hold.

But I dissent from the judgment insofar as it would allow retrial *unaffected by collateral estoppel.* The constitutional doctrine grants defendant protection. The majority are wrong to take it away. Or to *try* to take it away. They will not have the last word. The courts of the United States will speak when—and not if—defendant invokes their jurisdiction over state prisoners in habeas corpus. They "have the power," as the majority themselves recognize, "to effectively overrule our decision." (Maj. opn., *ante*, at p. 923.) That they are likely to do so seems apparent from *Pettaway* v. *Plummer* (9th Cir. 1991) 943 F.2d 1041, which "involved virtually the same issue and procedural posture as this case" (maj. opn., *ante*, at p. 923), and granted relief to the petitioner.

I

In the superior court, the People charged that defendant murdered and robbed Victor Guadron. They alleged for purposes of enhancement of sentence that he personally used a knife in the murder. In addition, they alleged for purposes of death-eligibility that he committed the murder under the special circumstance of felony-murder robbery. (They also made other allegations not pertinent here.)

Later, the People moved to dismiss the action on the ground of insufficient evidence. The superior court so ordered.

The People then recharged defendant with murder and robbery. They realleged the personal use of a knife in the murder and also the felony-murder-robbery special circumstance.

At trial, the People attempted to prove, beyond a reasonable doubt, that defendant was guilty of the murder of Guadron (via willful, deliberate, and

---

*Presiding Justice, Court of Appeal, Third Appellate District, assigned by the Acting Chairperson of the Judicial Council.

premeditated murder and/or felony murder) as a principal therein, under the theory that he was a direct and active perpetrator or under the theory that he was an aider and abetter. They also attempted to prove, beyond a reasonable doubt, that he personally used a knife in the crime. Their main witness was Anthony Nubla. He gave testimony that demonstrated that both defendant and he participated in the events in question. In so testifying, he attempted to shift as much responsibility as he could from his own shoulders onto those of defendant. To this end, he identified defendant as the stabber. Other evidence, however, suggested otherwise. Expert testimony established that Nubla's automobile, which was involved in the incident, was stained with the blood of two persons: apparently, one was Nubla and the other was Guadron; neither could have been defendant.

In its charge to the jury, the superior court defined, inter alia, murder, including willful, deliberate, and premeditated murder and felony murder; robbery, both as a predicate of felony murder and as a separate and independent crime; and the felony-murder-robbery special circumstance. It also set out the requirements for liability as a principal, either as a direct and active perpetrator or as an aider and abetter. And it declared that the People bore the burden to prove the charges and allegations beyond a reasonable doubt.

The jury returned verdicts finding defendant guilty of murder and robbery. It found it *true* that he committed the murder under the special circumstance of felony-murder robbery. But it found it *not true* that he personally used a knife in the crime. That means, among other things, that it *necessarily* determined that he was guilty of murder under a theory of felony-murder robbery (see, e.g., *People* v. *Berryman* (1993) 6 Cal.4th 1048, 1086 [25 Cal.Rptr.2d 867, 864 P.2d 40]), but had at least a reasonable doubt that he was the stabber.

The superior court rendered judgment accordingly.

The Court of Appeal reversed. (*People* v. *Santamaria* (1991) 229 Cal.App.3d 269 [280 Cal.Rptr. 43].) It concluded that the superior court committed prejudicial error by adjourning jury deliberations for 11 days without good cause. (*Id.* at pp. 274-283.)

After remand to the superior court, the People recharged defendant with murder and robbery. They realleged the felony-murder-robbery special circumstance. They did *not* reallege personal use of a knife in the murder.

Before the scheduled retrial, defendant made a collateral estoppel motion "to prohibit [his] retrial . . . for use of" a knife, "to limit evidence" on his

employment of the weapon, and to "preclude [the] prosecution's reliance on" the related "theory," which had been "adjudicated in [his] favor" at the original trial. (Capitalization deleted.) The People opposed. After a hearing, the superior court: (1) granted the motion to the extent that it sought to "preclud[e]" "the prosecution . . . from retrying the defendant on the enhancement . . . of personal use of a knife during the killing"; (2) granted the motion to the extent that it sought to "preclud[e]" "the prosecution" "from retrying the defendant on the theory that he personally used the knife during the killing"—"[t]o this end," it added, "the jury is to be instructed at appropriate intervals throughout the case that the defendant did not personally use a knife during the killing of the victim"; and (3) denied the motion to the extent that it sought "to preclude the introduction of evidence," but did so "without prejudice to objections, particularly, as to relevance during the course of the trial."

Subsequently, the superior court dismissed the action on its own motion. It did so after the People had represented that they were "unable to proceed on the theory that is left to us as a result of . . . [the] ruling on [the] collateral estoppel issue": "[T]he People find themselves in the situation where we have no other theory of prosecuting this murder; that is we have no evidence that the defendant was anything but the stabber . . . ." Defendant had opposed, but unsuccessfully.

The Court of Appeal affirmed. In a unanimous opinion by Justice Werdegar, then a member of that court, it concluded that the superior court did not err in ruling as it did on collateral estoppel.[1]

On the People's petition, we granted review.

## II

Whether to affirm or reverse the Court of Appeal's judgment depends, of course, on the soundness of the superior court's collateral estoppel ruling.

The applicable law may be summarized as follows.[2]

The double jeopardy clause of the Fifth Amendment to the United States Constitution declares that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." It is made enforceable against the states through the due process clause of the Fourteenth Amendment.

---

[1]Justice Werdegar's opinion, which I substantially adopt, is set out at length in the appendix.

[2]The law is presently fully in Justice Werdegar's opinion. (See appen., *post*, p. 937.)

(*Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715-716, 89 S.Ct. 2056].) It extends beyond guilt or innocence to punishment, so long as the latter is determined in a manner similar to the former. (See *Arizona* v. *Rumsey* (1984) 467 U.S. 203, 209-212 [81 L.Ed.2d 164, 170-172, 104 S.Ct. 2305]; *Bullington* v. *Missouri* (1981) 451 U.S. 430, 446 [68 L.Ed.2d 270, 283-284, 101 S.Ct. 1852].)

The double jeopardy clause "incorporates the doctrine of collateral estoppel in criminal proceedings." (*Schiro* v. *Farley* (1994) 510 U.S. __, __ [127 L.Ed.2d 47, 58, 114 S.Ct. 783, 790]; accord, *Ashe* v. *Swenson* (1970) 397 U.S. 436, 445 [25 L.Ed.2d 469, 476, 90 S.Ct. 1189]; *Dowling* v. *United States* (1990) 493 U.S. 342, 347 [107 L.Ed.2d 708, 716-717, 110 S.Ct. 668].) Collateral estoppel, however, is not limited by double jeopardy strictly defined, but reaches beyond it into a separate and independent sphere. (See *U.S.* v. *Bailin* (7th Cir. 1992) 977 F.2d 270, 275-276.) Stated most simply, it is "the principle that bars relitigation between the same parties of issues actually determined at a previous trial . . . ." (*Ashe* v. *Swenson, supra*, 397 U.S. at p. 442 [25 L.Ed.2d at p. 474].) It "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (*Id.* at p. 443 [25 L.Ed.2d at p. 475]; accord, *Schiro* v. *Farley, supra*, 510 U.S. at p. __ [127 L.Ed.2d at pp. 57-58, 114 S.Ct. at p. 790]; *Dowling* v. *United States, supra*, 493 U.S. at p. 347 [107 L.Ed.2d at pp. 716-717].) Among the evils that it is designed to prevent is the situation in which a trier of fact at an earlier trial reaches one conclusion and a trier of fact at a later trial "reache[s] a directly contrary conclusion." (*Dowling* v. *United States, supra*, 493 U.S. at p. 348 [107 L.Ed.2d at p. 717].)

Apparently, it is the criminal defendant who bears the burden to demonstrate that the doctrine of collateral estoppel is applicable on the facts of any given case. Certainly, it is he who bears "the burden . . . to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." (*Dowling* v. *United States, supra*, 493 U.S. at p. 350 [107 L.Ed.2d at p. 719]; accord, *Schiro* v. *Farley, supra*, 510 U.S. at p. __ [127 L.Ed.2d at pp. 58-59, 114 S.Ct. at p. 791].)

At the original trial, as noted above, the People attempted to prove, beyond a reasonable doubt, that defendant was guilty of the murder of Guadron (via willful, deliberate, and premeditated murder and/or felony murder) as a principal therein, under the theory that he was a direct and active perpetrator or under the theory that he was an aider and abetter. They also attempted to prove, beyond a reasonable doubt, that he personally used a knife in the crime.

At the original trial, as also noted above, the jury determined that defendant was indeed guilty of Guadron's murder. But it found that it was not true that he personally used a knife in the crime. That means that each and every juror, at the very least, had a reasonable doubt whether defendant personally used a knife therein.

It follows that no juror in fact determined that defendant was guilty of Guadron's murder on a theory dependent on his personal use of a knife in this crime, for example, on a theory that he was a principal as a direct and active perpetrator *solely through his personal use of a knife.*

Neither could any juror have properly so determined. The due process clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) That means not only every "elemen[t]" properly so called, but also every "fac[t] necessary to establish each of those elements . . . ." (*Sullivan* v. *Louisiana* (1993) 508 U.S. __, __ [124 L.Ed.2d 182, 188, 113 S.Ct. 2078, 2080].) It is true that personal use of a knife is not an element of the crime of murder. It is also true that, generally, it is not even a necessary fact for any of the elements. But it is indeed such a fact for the requisite unlawful act *insofar as guilt is predicated on a theory dependent thereon*—in this case, on a theory that defendant was a principal as a direct and active perpetrator *solely through his personal use of a knife.* Similarly, intent to steal is not an element of the crime of murder. Neither, generally, is it a necessary fact for any of the elements. But it is indeed such a fact for the requisite unlawful mental state insofar as guilt is predicated on a theory dependent thereon, for example, felony-murder robbery. Obviously, *no* juror can determine that a defendant is guilty of a crime beyond a reasonable doubt on a theory dependent on a necessary fact as to which *each and every* juror has a reasonable doubt.

Returning to my theme, I believe that defendant has carried whatever burden he may have borne to demonstrate that the doctrine of collateral estoppel is applicable on the facts of this case.

"[R]elitigation between the same parties of [any] issu[e] actually determined at a previous trial" is "bar[red]." (*Ashe* v. *Swenson, supra,* 397 U.S. at p. 442 [25 L.Ed.2d at pp. 474-475].) The parties on retrial, of course, would be the same as those at the original trial: the People and defendant. The issue that defendant sought to foreclose on retrial was the same as one of those actually determined at the original trial: whether or not he personally used a knife in the murder of Guadron. At the original trial, it was found *not true.*

On retrial, it could not be found *true*. Otherwise, "directly contrary conclusion[s]" could be reached. (*Dowling* v. *United States*, *supra*, 493 U.S. at p. 348 [107 L.Ed.2d at p. 717].) It is immaterial that the issue in question was established at the original trial through a finding on an allegation of a sentence enhancement rather than a verdict on a charge of a substantive offense. That is because, under California law, the sentence enhancement here is determined in a manner similar to a substantive offense. (See Pen. Code, §§ 969c, 1170.1, subd. (f).)

"[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (*Ashe* v. *Swenson*, *supra*, 397 U.S. at p. 443 [25 L.Ed.2d at p. 475]) Again, the issue that defendant sought to foreclose on retrial was the same as one of those actually determined at the original trial: whether or not he personally used a knife in the murder of Guadron. It is an issue of "ultimate fact." An "ultimate fact" is one that "must be proven beyond a reasonable doubt." (*U.S.* v. *Bailin*, *supra*, 977 F.2d at p. 280; see *U.S.* v. *Seley* (9th Cir. 1992) 957 F.2d 717, 723 [to similar effect].) Such is the case here. As explained above, personal use of a knife is a necessary fact for the unlawful-act element of the crime of murder *insofar as guilt is predicated on a theory dependent thereon*—in this case, on a theory that defendant was a principal as a direct and active perpetrator *solely through his personal use of a knife*. As such, it must be proved beyond a reasonable doubt under the command of the due process clause of the Fourteenth Amendment. (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at p. ___ [124 L.Ed.2d at pp. 187, 188, 113 S.Ct. at p. 2080].)

The result of the foregoing collateral estoppel analysis is as follows.

On retrial, the People would be allowed to attempt to prove, beyond a reasonable doubt, that defendant was guilty of the murder of Guadron (via willful, deliberate, and premeditated murder and/or felony murder) as a principal therein, under the theory that he was a direct and active perpetrator or under the theory that he was an aider and abetter—with the sole exception that they would be prohibited from attempting to prove that he was guilty as a principal under the theory that he was a direct and active perpetrator *solely by personally using a knife*. In other words: The People could attempt to prove that defendant was guilty as a principal *specifically* as a direct and active perpetrator *other than through his personal use of a knife*. They could also attempt to prove that he was guilty as a principal *specifically* as an aider and abettor. In addition, they could attempt to prove that he was guilty, as it were, "unspecifically," that is, that although his precise role could not be determined, he was *either* a direct and active perpetrator *or* an aider and

abettor. They would be prohibited only from attempting to prove that he was guilty as a principal as a direct and active perpetrator *solely through his personal use of a knife.* Otherwise, directly contrary conclusions might be reached by different triers of fact. The jury at the original trial concluded that there was at least a reasonable doubt that defendant personally used a knife. Without the indicated prohibition, a jury on retrial might conclude that there was not a reasonable doubt about the matter.

The result of the collateral estoppel analysis in this case is unremarkable.

It is undisputed (see maj. opn., *ante,* at p. 910) and indisputable (see *People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 78, fn. 22 [2 Cal.Rptr.2d 389, 820 P.2d 613]) that the doctrine of collateral estoppel prohibits reallegation that defendant personally used a knife in the murder of Guadron. It follows that the doctrine bars relitigation of the fact alleged. Were it not so, form would prevail over substance: the once rejected *allegation* could not be reconsidered, but the once rejected *fact alleged* could be.

To be sure, the result of the collateral estoppel analysis in this case yields little real benefit to defendant. But it is the primary benefit he sought before the superior court. In counsel's words: "We're not claiming that the People are precluded from retrying the defendant for murder. That's not our position. [¶] Our position is that they may not try the defendant on the theory that he used the knife because that was the theory that was decided adversely to them in the first proceeding." Defendant has not deviated a whit before this court. To quote his brief: What he "seeks" is "to foreclose on retrial" "the issue" "whether he used the knife" in the murder. What he is entitled to may not be much, but he is entitled to it nonetheless.

Defendant, of course, did indeed *receive* a substantial benefit: dismissal of the action. But that was given to him by the People. True, the People had *represented* that they were "unable to proceed on the theory that is left to us as a result of . . . [the] ruling on [the] collateral estoppel issue." They were wrong. For the charge of murder, they had available the theory of felony-murder robbery—under which the jury had found defendant guilty. The testimony of Nubla—with or without the identification of defendant as the stabber—would have been sufficient. There was a robbery. Defendant was a principal therein. There was also a killing. "There is no requirement of a strict 'causal' [citation] or 'temporal' [citation] relationship between the [robbery] and the [killing.] All that is demanded is that the two 'are parts of one continuous transaction.' " (*People* v. *Berryman, supra,* 6 Cal.4th at p. 1085.) Such is the case here. For the allegation of the felony-murder-robbery

special circumstance, which then required intent to kill (see, e.g., *People* v. *Duncan* (1991) 53 Cal.3d 955, 973 [281 Cal.Rptr. 273, 810 P.2d 131]), the People had available the facts themselves, which established such intent for defendant, whether or not he was the stabber. For Guadron had not only been stabbed, but also strangled and run over by Nubla's automobile.

In view of the foregoing, the superior court's collateral estoppel ruling was sound in general.

But not *in its entirety*.

Recall the superior court's "instruction." It directed that "the jury is to be instructed at appropriate intervals throughout the case that the defendant did not personally use a knife during the killing of the victim." It erred thereby. For the reasons stated above, it should have directed that the jury be instructed *only* that it could not find that defendant was guilty as a principal as a direct and active perpetrator *solely through his personal use of a knife*.

## III

At the outset, the majority approach, but ultimately draw back from, the conclusion that the double jeopardy clause, including its collateral estoppel component, does not apply to retrials or questions of penalty but only to new trials and matters of substantive offenses. To my mind, they do well to do so.[3]

But the majority *do* conclude that the doctrine of collateral estoppel is not applicable on the facts of this case. Their reasoning, however, is flawed. Moreover, their extensive criticism of *Pettaway* v. *Plummer, supra,* 943 F.2d 1041, fails to strike to that decision's core.[4] A fortiori, it is insufficient to provoke reconsideration.

In support of their conclusion against collateral estoppel, the majority assert that the issue that defendant sought to foreclose on retrial was not the same as any of those actually determined at the original trial. Not so. At the original trial, the jury actually determined that it was *not true* that defendant personally used a knife in the murder of Guadron. That and that alone is the issue that defendant sought to foreclose on retrial. His "position" was simply that the People could not try him again "on the theory that he used the knife

[3]The majority's efforts in this regard are fully anticipated in, and soundly dispatched by, Justice Werdegar's opinion. (See appen., *post*, at p. 937.)

[4]Here too, the majority's efforts are fully anticipated in, and soundly dispatched by, Justice Werdegar's opinion. (See appen., *post*, at p. 937.)

. . . ." The majority gratuitously assert that, "[a]lthough defendant claims he merely seeks to preclude the theory that he used the knife, he necessarily is claiming more; he seeks to preclude the theory, and evidence to support the theory, that he *either* used the knife *or* aided and abetted the one who did." (Maj. opn., *ante*, at p. 920, italics in original.) Defendant is doing no such thing, "necessarily" or otherwise. And even if he were, that would not matter. Surely, he does not forfeit his right to preclude a narrow issue merely by attempting to preclude a broader one and its supporting evidence.

The majority then assert that the issue that defendant sought to foreclose on retrial is not an issue of "ultimate fact." Again not so. As explained above, personal use of a knife is an "ultimate fact" because it must be proved beyond a reasonable doubt; it must be proved beyond a reasonable doubt because it is a necessary fact for the unlawful-act element of the crime of murder *insofar as guilt is predicated on a theory dependent thereon*—in this case, on a theory that defendant was a principal as a direct and active perpetrator *solely through his personal use of a knife.*

Perhaps troubled by their conclusion against collateral estoppel, the majority may be understood to argue that any directly contrary conclusions that might be reached by different juries in violation of the doctrine, even if real, would at least not be apparent. That may be true. The jury at the original trial revealed its conclusion, through its not true finding on the personal-use-of-a-knife allegation. A jury on retrial would not do so, since it would have no allegation to determine in the first place. But ignorance of the fact that conclusions are directly contrary would not make them otherwise. Neither would it excuse the resulting violation.

IV

For the reasons stated above, I would reverse the judgment of the Court of Appeal with directions to that court to vacate the superior court's order dismissing the action with directions to *that* court to set aside its "instruction" and devise a new and different instruction, to the effect that the jury could not find that defendant was guilty as a principal as a direct and active perpetrator *solely through his personal use of a knife.*

KENNARD, J., Concurring and Dissenting.—I concur in the result reached by the majority. But for the reasons given below, I do not join in part II.B. of the majority opinion.

In part II.B. of its opinion, the majority addresses a question that is not essential to the decision in this case: When a defendant's conviction is

reversed on appeal, can the doctrine of collateral estoppel *ever* be applied at the retrial of the crime of which the defendant was convicted? The majority does not seem to think so. (Maj. opn., *ante*, at p. 914.) I am, however, not persuaded by the majority's strong implication that the purposes underlying the doctrine of collateral estoppel are *never* implemented by its application on retrial. Because the doctrine of collateral estoppel may be asserted in a wide variety of fact patterns, I would not foreclose the possibility that in some cases, application of the doctrine on retrial may well be appropriate.

APPENDIX

[To concurring and dissenting opinion of Mosk, J.]

". . . . . . . . . . . . . . . . . . . . . . .

"Once a jury has convicted a defendant of murder but found he did not personally use a knife in the commission of the crime for purposes of a sentence enhancement . . . , may the defendant, following his successful appeal, be retried for murder on the theory he personally stabbed the victim to death? [Fn. omitted.] The answer requires us to resolve whether the collateral estoppel component of the double jeopardy clause [of the Fifth Amendment] applies to jury determinations of facts alleged for the purpose of a sentence enhancement. The issue has been the subject of conflicting opinions; as we shall explain, we believe United States Supreme Court precedent compels the conclusion that a negative enhancement finding may have collateral estoppel effect upon retrial for the underlying offense. On the facts presented here, the negative enhancement finding precludes the People from retrying defendant on the theory he personally killed the victim with a knife.

". . . . . . . . . . . . . . . . . . . . . . .

" ' "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' (*Ashe* v. *Swenson* (1970) 397 U.S. 436, 443 [25 L.Ed.2d 469, 475, 90 S.Ct. 1189]; see also *People* v. *White* (1986) 185 Cal.App.3d 822, 827 [231 Cal.Rptr. 569].) The principle thus precludes relitigation of an ultimate fact issue ' ' "if (1) the issue necessarily decided at the previous trial is identical to the one which is sought to be relitigated; if (2) the previous trial resulted in a final judgment on the merits; and if (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial. [Citations.]" [Citation.]' (*People* v. *Howard* (1988) 44 Cal.3d 375, 411 [243 Cal.Rptr. 842, 749 P.2d 279].) In *Ashe* v. *Swenson, supra,* the United States Supreme Court held collateral estoppel is an element of the Fifth Amendment guarantee against double jeopardy. (397 U.S. at pp. 442, 445 [25 L.Ed.2d at pp. 474-475, 476].)

"As explained by our Supreme Court, the purposes underlying application of the collateral estoppel doctrine are '(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which

undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. [Citation.]' (*People* v. *Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622].) Although courts on occasion describe the doctrine as an equitable concept whose application depends on principles of fairness relevant to a particular case (e.g., *People* v. *Taylor, supra,* at p. 695, citing *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439]; *People* v. *Pettaway* (1988) 206 Cal.App.3d 1312, 1319 [254 Cal.Rptr. 436], citing *People* v. *Taylor, supra; People* v. *Nunez* (1986) 183 Cal.App.3d 214, 222 [228 Cal.Rptr. 64], quoting *Sandoval* v. *Superior Court* (1983) 140 Cal.App.3d 932, 941 [190 Cal.Rptr. 29]), in a criminal case when the same defendant is involved in both trials, the bar of collateral estoppel is constitutionally compelled (*People* v. *Taylor, supra,* 12 Cal.3d at p. 692, citing *Ashe* v. *Swenson, supra,* 397 U.S. at pp. 443-447 [25 L.Ed.2d at pp. 475-478]).

"In this case, the trial court relied on the opinion of our colleagues in Division Five in *People* v. *White, supra,* 185 Cal.App.3d 822 and on the Ninth Circuit's opinion in *Pettaway* v. *Plummer* (9th Cir. 1991) 943 F.2d 1041, certiorari denied (1992) __ U.S. __ [121 L.Ed.2d 220, 113 S.Ct. 296], in ruling the jury finding defendant did not personally use a knife in the commission of the murder estopped the People from relitigating that point on retrial. Both decisions hold a jury's finding on an enhancement allegation may carry collateral estoppel effect upon retrial after appeal. The trial court declined to follow the conflicting majority decision of Division Two of this district in *People* v. *Pettaway, supra,* 206 Cal.App.3d 1312.

"*People* v. *White, supra,* involved a fact situation indistinguishable from that before us. The defendant was charged with a double murder and a sentence enhancement for use of a firearm in the commission of the murders. He was found guilty of the murders, but the jury returned a not true finding on the firearm-use allegation. After the convictions were reversed on appeal, the trial court denied the defendant's motion to bar the prosecution from proceeding on the theory he was the actual killer. (185 Cal.App.3d at p. 826.) The defendant was again convicted on the murder counts. (*Id.* at p. 824.)

"The Court of Appeal reversed on grounds of double jeopardy and collateral estoppel: 'Appellant's use of a gun was resolved adversely against the prosecution in the first trial, and should not have been relitigated in the second. The prosecution is not prevented from proceeding on the theory that appellant supplied the weapons or otherwise participated as a principal. (See Pen. Code, § 31.) What it cannot do is relitigate the fact of appellant's *use* of

a gun in these homicides, since that issue was decided against it in the first trial. Principles of double jeopardy and due process which incorporate the doctrine of collateral estoppel preclude such action.' (*People* v. *White, supra,* 185 Cal.App.3d at pp. 827-828, italics in original.)

"Two years later, a majority of Division Two of this district reached the opposite conclusion on similar facts, holding double jeopardy protection does not apply to jury findings on enhancement allegations. (*People* v. *Pettaway, supra,* 206 Cal.App.3d 1312.) The majority's conclusion was based largely on the notion that a finding of not true on a sentence enhancement allegation is not equivalent to an acquittal of a substantive crime and therefore does not enjoy the protections of the double jeopardy clause or the preclusive effect of the collateral estoppel doctrine included within it. (*Id.* at pp. 1322-1327.)

"Facing the same issue on Pettaway's petition for habeas corpus, the Ninth Circuit disagreed. (*Pettaway* v. *Plummer, supra,* 943 F.2d 1041.) '[T]he fact that the personal use determination at issue in the present case was not formally necessary for a finding of guilt on the murder charge does not prevent the finding from having collateral estoppel effect in this case.' (*Id.* at p. 1044.) Because the proceeding on the enhancement, although not intrinsic to the question of guilt or innocence, had the ' "hallmarks of a trial on guilt or innocence" '—i.e., the state was required to prove the enhancement allegations beyond a reasonable doubt—the personal-use issue was ' "necessarily determined" ' for purposes of collateral estoppel. (*Id.* at pp. 1044-1045, citing *Bullington* v. *Missouri* (1981) 451 U.S. 430, 438-439 [68 L.Ed.2d 270, 278-279, 101 S.Ct. 1852] [state's failure to obtain death sentence at first trial barred second attempt].)

"The People now urge us to follow *People* v. *Pettaway, supra,* in holding collateral estoppel principles inapplicable. Having carefully considered the relevant authority as well as the policies underlying collateral estoppel and double jeopardy, we agree rather with the conclusion reached in *People* v. *White, supra,* and *Pettaway* v. *Plummer, supra,* that collateral estoppel may apply to jury findings on sentence enhancement allegations."

" . . . . . . . . . . . . . . . . . . . . .

"In *Bullington* v. *Missouri, supra,* 451 U.S. 430, the United States Supreme Court addressed whether double jeopardy barred the state from attempting to impose the death penalty at retrial after the defendant's original conviction on a murder charge was reversed, when the state had failed to obtain the death penalty in the sentencing phase of the first trial.

Under federal constitutional law, the imposition of a sentence generally does not have double jeopardy effect. (See *United States* v. *DiFrancesco* (1980) 449 U.S. 117, 132-138 [66 L.Ed.2d 328, 342-347, 101 S.Ct. 426].) In *Bullington*, however, the court distinguished cases holding the double jeopardy clause inapplicable to sentencing decisions on the basis that, in those cases, the sentencing proceedings at issue were characterized by the sentencing court's broad discretion in choosing an appropriate punishment from a wide range of potential penalties and by a burden of proof lower than that of beyond a reasonable doubt. (451 U.S. at pp. 437-439 [68 L.Ed.2d at pp. 277-279].) Thus, they bore little resemblance to a trial on guilt or innocence.

"Under Missouri's capital sentencing procedures, in contrast, the sentencer is required to choose between two discrete sentencing options—death or life without probation or parole for 50 years. (*Bullington* v. *Missouri*, *supra*, 451 U.S. at p. 432 [68 L.Ed.2d at pp. 274-275].) Moreover, to obtain the aggravated penalty the prosecution must prove certain facts beyond a reasonable doubt, in a proceeding that 'resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence.' (*Id.* at pp. 438, 444 [68 L.Ed.2d at p. 282].) Thus, unlike with traditional sentencing decisions, under Missouri's capital sentencing scheme the state's failure to obtain the harsher sentence demonstrated it had failed to prove its case; that being so, principles of double jeopardy precluded the state from seeking the death penalty on retrial. (*Id.* at pp. 441-446 [68 L.Ed.2d at pp. 280-284], citing *Burks* v. *United States* (1978) 437 U.S. 1, 15-16 [57 L.Ed.2d 1, 12-13, 98 S.Ct. 2141]; *Green* v. *United States* (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204-205, 78 S.Ct. 221, 61 A.L.R.2d 1119].)

"In *Arizona* v. *Rumsey* (1984) 467 U.S. 203 [81 L.Ed.2d 164, 104 S.Ct. 2305], the United States Supreme Court reaffirmed the principle stated in *Bullington* in holding double jeopardy precluded the state from seeking the death penalty after reversal of the original sentencing decision: 'The capital sentencing proceeding in Arizona shares the characteristics of the Missouri proceeding that make it resemble a trial for purposes of the Double Jeopardy Clause. The sentencer—the trial judge in Arizona—is required to choose between two options: death, and life imprisonment without possibility of parole for 25 years. The sentencer must make the decision guided by detailed statutory standards defining aggravating and mitigating circumstances; in particular, death may not be imposed unless at least one aggravating circumstance is found, whereas death must be imposed if there is one aggravating circumstance and no mitigating circumstance sufficiently substantial to call for leniency. The sentencer must make findings with respect to each of the statutory aggravating and mitigating circumstances, and the sentencing hearing involves the submission of evidence and the presentation of argument.

The usual rules of evidence govern the admission of evidence of aggravating circumstances, and the State must prove the existence of aggravating circumstances beyond a reasonable doubt. [Citations.] As the Supreme Court of Arizona held, these characteristics make the Arizona capital sentencing proceeding indistinguishable for double jeopardy purposes from the capital sentencing proceeding in Missouri. [Citation.]' *(Id.* at pp. 209-210 [81 L.Ed.2d at pp. 170-171].)

"We are unable to discern any principled difference between the capital sentencing procedures at issue in *Bullington* and *Rumsey* and the procedures for trying the enhancement allegation in the instant case.[1] The personal-use enhancement had to be 'pleaded and proven as provided by law' ([Pen. Code,] § 1170.1, subd. (f)); the jury was required to decide the enhancement allegation if it found defendant guilty on the underlying charge ([*id.,*] § 1158a); and the prosecution had the burden of proving the allegation to the jury beyond a reasonable doubt (cf. *People* v. *Morton* (1953) 41 Cal.2d 536, 539 [261 P.2d 523]; *People* v. *Allen* (1985) 165 Cal.App.3d 616, 626 [211 Cal.Rptr. 837]). Mindful of *Bullington*'s focus, for double jeopardy purposes, on whether the proceeding at issue bears 'the hallmarks of [a] trial on guilt or innocence' (*Bullington* v. *Missouri, supra,* 451 U.S. at p. 439 [68 L.Ed.2d at p. 279]), we find defendant's previous trial on the knife-use enhancement clearly meets that test; consequently, pursuant to the authorities previously discussed, the jury's negative finding on the enhancement would appear to bar the People from retrying defendant for murder on the theory he personally killed Guadron with a knife.

"'. . . . . . . . . . . . . . . . . . . . . . . . .

"The People argue collateral estoppel does not apply because the negative finding on the sentence enhancement was not a 'final judgment.' (See *People* v. *Howard, supra,* 44 Cal.3d at p. 411.) Echoing the reasoning of the majority in *People* v. *Pettaway, supra,* they contend this is so because the

---

[1]"Unlike the majority in *People* v. *Pettaway, supra,* 206 Cal.App.3d at pages 1328-1329, we do not find it a significant distinction that the procedures addressed in *Bullington* and *Rumsey* required a separate trial on the issue of punishment after the defendant was convicted of the crime charged, whereas here the prosecutor was required to prove guilt on the underlying offense and the truth of the enhancement allegations during the same proceeding. 'Where the original proceedings have all the characteristics of a trial on guilt or innocence, it does not matter whether the fact at issue was originally determined in the guilt/innocence phase, the sentencing phase, or, as here, as an enhancement factor tried during the guilt/innocence phase. [Citation.]' (*Pettaway* v. *Plummer, supra,* 943 F.2d at p. 1045, fn. 2.) If anything, the procedure employed here for determining the truth of the enhancement allegations during the trial on the underlying charge is less distinguishable from a trial on guilt or innocence than were the separate, postconviction penalty proceedings at issue in *Bullington* and *Rumsey.*"

enhancement has 'no independent viability' apart from the underlying offense. (See 206 Cal.App.3d at pp. 1322-1325.)

"We disagree. For purposes of collateral estoppel, a 'final judgment' is defined as one that is 'free from direct attack.' (*People* v. *Sims* (1982) 32 Cal.3d 468, 486 [186 Cal.Rptr. 77, 651 P.2d 321].) Stated differently, 'To be "final" for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment.' (*Miller Brewing Co.* v. *Jos. Schlitz Brewing Co.* (7th Cir. 1979) 605 F.2d 990, 996, cert. den. 444 U.S. 1102 [62 L.Ed.2d 787, 100 S.Ct. 1067], and cases cited therein.) Here, while a weapons enhancement is not, as the People observe, a criminal offense, and no final judgment has been entered on the charged murder offense, the jury's negative finding on the enhancement allegation is indisputably immune from appeal or direct attack, reversal or amendment. (See *United States* v. *Scott* (1978) 437 U.S. 82, 91 [57 L.Ed.2d 65, 74, 98 S.Ct. 2187].)[2] Consequently, the ultimate fact that defendant did not personally use a knife in the killing has for collateral estoppel purposes been finally determined.

"That the jury's negative finding is final also disposes of the People's contention the policies underlying collateral estoppel and double jeopardy would not be served by applying the doctrine in this case. The People raised the same argument in *Pettaway* v. *Plummer, supra,* and the Ninth Circuit squarely rejected it. The Ninth Circuit correctly saw that because the issue of ultimate fact expressed in the jury's verdict had been finally determined, permitting the People to retry the defendant on the same factual theory would raise the specter of successive inconsistent verdicts: 'If the state is allowed to proceed on the theory that Pettaway pulled the trigger himself, it is possible that the second jury would convict Pettaway by reaching a conclusion directly contrary to that reached by the jury in the first trial. This possibility is abhorrent to the principles underlying the Double Jeopardy Clause.' (943 F.2d at p. 1047, citing *Dowling* v. *United States* (1990) 493 U.S. 342, 347-349 [107 L.Ed.2d 708, 716-718, 110 S.Ct. 668].)

"Moreover, as the United States Supreme Court explained in *Green* v. *United States, supra,* the idea underlying the prohibition against double jeopardy, 'one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for

---

[2]"The People's reliance on cases holding the collateral estoppel component of the double jeopardy clause does not bar retrial of a criminal charge following the defendant's successful appeal from a conviction on that offense are inapposite. Here, although defendant was originally convicted on the underlying murder charge, the jury effectively *acquitted* him of having used a knife in the commission of that crime." (Italics in original.)

an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' (355 U.S. at pp. 187-188 [2 L.Ed.2d at pp. 204-205].) 'Having received "one fair opportunity to offer whatever proof it could assemble," [citation], the State is not entitled to another.' (*Bullington* v. *Missouri, supra,* 451 U.S. at p. 446 [68 L.Ed.2d at pp. 476-477]; see also *Pettaway* v. *Plummer, supra,* 943 F.2d at p. 1048.)

"The same aims of judicial economy and of avoiding inconsistent judgments, vexatious litigation, and the risk of erroneous judgments that inform the prohibition against double jeopardy underlie the doctrine of collateral estoppel as well. (See *People* v. *Taylor, supra,* 12 Cal.3d at p. 695.) That defendant, having obtained a reversal on appeal, is in any event subject to retrial on the charged murder offense does not, as the People would have it, render these policy considerations wholly inapplicable. Although in cases of retrial the saving of judicial resources is reduced and the defendant denied complete repose, the other compelling reasons for application of collateral estoppel—prevention of harassment and anxiety and of the risk of erroneous judgments and inconsistent verdicts—still apply. (Cf. *People* v. *Taylor, supra,* 12 Cal.3d at pp. 695-696.) Because the first jury rejected the state's case that defendant personally stabbed Guadron to death, to permit the People to retry him for murder on the same theory would violate these fundamental considerations. As the court stated in *Pettaway* v. *Plummer, supra,* 943 F.2d at page 1048, 'Allowing the state to reprosecute [defendant] for murder on the theory that he was the actual perpetrator of the murder permits the state to remedy the flaws it perceives as having been fatal to its case the first time, and to attempt to convince a second jury of that which it tried and failed to prove to the first jury.'[3]

---

[3]"The People point out that in the recent case of *United States* v. *Dixon* (1993) 509 U.S. ___ [125 L.Ed.2d 556, 113 S.Ct. 2849], the United States Supreme Court overruled *Grady* v. *Corbin* (1990) 495 U.S. 508 [109 L.Ed.2d 548, 110 S.Ct. 2084], a case relied on by the court in *Pettaway* v. *Plummer, supra,* 943 F.2d at pages 1046-1048. As the People acknowledge, however, the high court repeatedly observed that the issue of collateral estoppel was not before it in *Dixon.* Indeed, the court expressly recognized that 'The collateral-estoppel effect attributed to ·the Double Jeopardy Clause, see *Ashe* v. *Swenson,* 397 U.S. 436 (1970) [25 L.Ed.2d 469, 90 S.Ct. 1189], may bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts' (509 U.S. at p. ___ [125 L.Ed.2d at p. 573], italics omitted) and, further, that 'Under *Ashe* v. *Swenson* [*supra*], an acquittal in the first prosecution might well bar litigation of certain facts essential to the second one . . . .' ([*I*]*d.* at p. [__] [125 L.Ed. at p. 577, fn. 15].)

"Nevertheless, based on the foregoing quotes, the People argue the clear implication is that collateral estoppel applies to subsequent prosecutions and serves to protect verdicts of acquittal, neither present here. We disagree these passing comments in *Dixon* add anything new to the controversy before us."

"The misconception that the negative use finding was not final also colors the People's related argument that the collateral estoppel component of double jeopardy applies only to new prosecutions, not to retrials. The issue preclusion concept of collateral estoppel, the People argue, is fundamentally at odds with the process of appeal, reversal and retrial of a criminal offense. Citing [Penal Code] section 1180, which provides that 'a new trial places the parties in the same position as if no trial had been had,' they assert a defendant who succeeds in getting his conviction reversed on appeal must accept both the benefits and the consequences of his success; on reversal, he has a second opportunity to defend against the charge and the prosecution has a second opportunity to prove it, using all relevant evidence.

"The broad notion a defendant who obtains a reversal must accept both the 'benefits and the consequences' of a successful appeal was expressly rejected by our Supreme Court in *People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 72 [2 Cal.Rptr.2d 389, 820 P.2d 613]. As the court there recognized, although criminal proceedings are subject to reinstatement after a defendant's successful appeal, '[t]he scope of any reprosecution may, nevertheless, be restricted.' In a footnote, the court explained: ' "[A]ny error affecting the express verdict of guilty does not affect the conclusiveness of [an] implied verdict of acquittal. [Citations.]" [Citation.] . . . In this situation, the defendant is not obligated to resolve the tension generated by invoking conflicting constitutional protections, but may preserve for himself whatever double jeopardy benefits accrued in his first trial notwithstanding some fatal defect in the proceedings. [Citations.] To conclude otherwise would unduly impair the defendant's right of appeal. [Citation.]' (*Id.* at p. 72, fn. 14; see *People* v. *Asbury* (1985) 173 Cal.App.3d 362, 366 [218 Cal.Rptr. 902].)

"Further contrary to the People's argument are the numerous federal cases in which collateral estoppel analysis was applied upon retrial following mistrial or reversal. (See, e.g., *U.S.* v. *Seley* (9th Cir. 1992) 957 F.2d 717 [retrial after jury hung]; *U.S.* v. *Dray* (1st Cir. 1990) 901 F.2d 1132 [dictum; retrial after appeal]; *Pugliese* v. *Perrin* (1st Cir. 1984) 731 F.2d 85 [retrial after appeal]; *United States* v. *Mespoulede* (2d Cir. 1979) 597 F.2d 329 [retrial after jury hung]; cf. *Durosko* v. *Lewis* (9th Cir. 1989) 882 F.2d 357, 359-361 [distinguishing *Bullington* because second proceeding had lower standard of proof]; *Rice* v. *Marshall* (6th Cir. 1987) 816 F.2d 1126, 1130-1132 [failure to object to evidence rape defendant was carrying firearm constituted ineffective assistance of counsel where defendant was previously acquitted of firearm charge].) More importantly, *Bullington* v. *Missouri, supra,* 451 U.S. 430, and *Arizona* v. *Rumsey, supra,* 467 U.S. 203 make clear that double jeopardy applies where the trier of fact, in a penalty proceeding

sharing key characteristics of a trial on guilt or innocence, has previously found not true the alleged conduct of the defendant the state would seek to prove upon resentencing after retrial of the underlying offense. We perceive no reason why the collateral estoppel element of the double jeopardy clause would not likewise apply to facts underlying a sentence enhancement found not true in the guilt phase of trial, if the criteria for its application were otherwise met.[4]

"`.` . . . . . . . . . . . . . . . . . . . . . . . .

"The People make several other arguments in favor of reversal, none of which we find persuasive. First, that the jury was not required to isolate one theory as the basis for its guilty verdict on the murder charge, as the People correctly observe, is not to the point. True, the jury was not required to decide whether defendant was the perpetrator or an aider and abettor in order to find him guilty; rather, each juror need only have found him guilty of murder beyond a reasonable doubt. (See *People* v. *Pride* (1992) 3 Cal.4th 195, 249 [10 Cal.Rptr.2d 636, 833 P.2d 643].) Nonetheless, the prosecution having initially failed to prove defendant personally used the knife during the killing, as the negative finding on the enhancement demonstrates, the collateral estoppel component of double jeopardy now prevents it from a second try at proving the theory the jury rejected at the first trial. Here, as in the case of reversal for evidentiary insufficiency, 'the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble.' (*Burks* v. *United States, supra,* 437 U.S. at p. 16 [57 L.Ed.2d at pp. 12-13], fn. omitted.)

"Nor is the collateral estoppel problem cured by the rule that inconsistent verdicts may stand, as long as sufficient evidence supports the counts resulting in conviction. Observing that defendant could not have challenged

---

[4]"The statement in *Ohio* v. *Johnson* (1984) 467 U.S. 493, 500, footnote 9 [81 L.Ed.2d 425, 434, 104 S.Ct. 2536], that double jeopardy and collateral estoppel do not apply 'where the State has made no effort to prosecute the charges seriatim . . .' is not to the contrary. The defendant there was charged in a single indictment with murder, involuntary manslaughter, aggravated robbery and grand theft. The trial court accepted his guilty plea to involuntary manslaughter and grand theft and then dismissed the murder and robbery charges on the theory prosecution for those remaining charges would subject the defendant to double jeopardy. The United States Supreme Court disagreed, observing 'the taking of a guilty plea is not the same as an adjudication on the merits after full trial, such as took place in *Ashe* v. *Swenson.* Moreover, *in a case such as this,* where the State has made no effort to prosecute the charges seriatim, the considerations of double jeopardy protection implicit in the application of collateral estoppel are inapplicable.' (*Id.* at p. 500, fn. 9 [81 L.Ed.2d at p. 434], italics added.) *Johnson,* thus, did not involve successive trials, either on the same charge or on a different charge. In contrast, in this case the People propose to retry defendant on a theory a jury has previously rejected—that defendant personally used a knife in the commission of the murder."

his murder conviction on appeal on the ground it was inconsistent with the negative use-enhancement finding (see *United States* v. *Powell* (1984) 469 U.S. 57, 64-65 [83 L.Ed.2d 461, 467-468, 105 S.Ct. 471] [no constitutional prohibition against inconsistent verdicts]; [Pen. Code,] § 954 ['An acquittal of one or more counts shall not be deemed an acquittal of any other count.']; *People* v. *York* (1992) 11 Cal.App.4th 1506, 1510 [15 Cal.Rptr.2d 66] [(Pen. Code,) § 954 permits inconsistent verdicts]), the People argue defendant necessarily cannot use the finding to bar the state from subjecting him to a second trial for murder on the theory he killed Guadron with a knife.

"The People's argument ignores that double jeopardy considerations, inapposite at the original trial, come into play on retrial of 'issues previously adjudicated to finality.' (*People* v. *White, supra*, 185 Cal.App.3d at p. 828; see *United States* v. *Scott, supra*, 437 U.S. at p. 91 [57 L.Ed.2d at p. 74].) For this reason, *People* v. *Lopez* (1982) 131 Cal.App.3d 565 [182 Cal.Rptr. 563], relied on by the People to support their analogy to inconsistent verdicts, has no bearing on the prohibition against double jeopardy that governs this case. *Lopez* was concerned not with successive trials, as here, but rather with the legal effect on appeal of inconsistent verdicts and findings at trial. The jury had found the defendant guilty of six counts of assault with a deadly weapon, but that he did not personally use a firearm in commission of the offenses. At issue was whether, in light of the jury's negative use-enhancement finding, the appellate court's examination of the verdicts for sufficiency of the evidence had to be made on the basis the defendant was convicted as an aider and abettor, not as a principal. (*Id.* at p. 569.) Relying by analogy on [Penal Code] section 954, permitting inconsistent verdicts, the court held it did not; notwithstanding the inconsistency between the negative finding and the guilty verdicts, the only issue on appeal was whether the verdicts were supported by substantial evidence, and in making this determination, the court could consider evidence of the defendant's weapon use. (*Id.* at p. 571.)

"We observe, moreover, the guilty verdict and negative special finding in this case were not necessarily inconsistent. The jury was instructed on liability of an aider and abettor and on the felony-murder liability of all participants in a robbery leading to death. They were also instructed the robbery-murder special circumstance applied to a murder 'committed while the defendant was engaged in or was an accomplice in the commission of a robbery.' On the day they reached their verdicts, the jury asked about what they perceived to be a conflict between the robbery-murder special-circumstance instruction and the special circumstance verdict form. The verdict form referred to the murder being committed 'while the defendant was engaged in the commission of a robbery,' without any reference to defendant

being an accomplice in the robbery. In answer to the question, the court stated the language of the instruction controlled and referred the jury to CALJIC No. 3.00 (stating aiders and abettors are principals in the crime). As the prosecutor commented after the trial, the jury's question 'implied reliance on aiding and abetting principles.'[5] The specific finding defendant did not personally use a knife is not inconsistent with a finding defendant aided and abetted Nubla in the robbery murder.

"Finally, the People argue that even if double jeopardy applies to bar reprosecution of the enhancement allegation, the doctrine may not be used to preclude introduction of evidence relevant to the murder charge upon retrial. Contrary, however, to the People's premise, the trial court's ruling related not to evidence per se, but to the theory of defendant's culpability; while the court barred the prosecution from retrying defendant on the theory he personally used the knife in *the commission of the murder*—the theory the prosecution failed to prove at trial—it did not prohibit the prosecution from retrying defendant on the theory he was the perpetrator (as well as an aider and abettor), nor did it preclude the introduction of all evidence relating to defendant's possible knife use, so long as that evidence was relevant to a permissible theory. In this, the court's order, we believe, was consistent with the United States Supreme Court decision in *Dowling* v. *United States, supra,* 493 U.S. 342. There, in the context of successive prosecutions for different offenses, the court held the presentation of specific evidence in one trial, resulting in the defendant's acquittal, does not preclude the introduction of that same evidence in a subsequent prosecution to prove an issue not necessarily decided in the earlier acquittal. (*Id.* at pp. 350-352 [107 L.Ed.2d at pp. 718-720].) Consistent with *Dowling,* nothing in the trial court's order here would seem to preclude the prosecution, had it elected to do so, from introducing otherwise admissible evidence relevant to a permissible theory. (See *Dowling, supra,* at pp. 347-352 [107 L.Ed.2d at pp. 716-720].)

". . . . . . . . . . . . . . . . . . . . . . . .

"As we observed above, collateral estoppel bars relitigation of an issue of ultimate fact where the issue necessarily decided at the previous trial is identical to the one the People seek to relitigate, the previous trial resulted in a final judgment on the merits, and the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior trial.

---

[5]"Although Nubla testified defendant was the perpetrator, his testimony was not the whole of the case against defendant. Apart from Nubla's testimony, which the jury may have discounted, independent evidence of defendant's motive and of his admission of involvement in the killing supported a rational finding he participated in the killing, even if he was not shown beyond a reasonable doubt to have personally stabbed Guadron."

(*People* v. *Howard*, *supra*, 44 Cal.3d at p. 411.) Having concluded the jury's negative finding on the use enhancement constitutes a final judgment, the sole remaining controversy concerns whether the trial court erred in finding the issue of defendant's knife use in commission of the killing was 'necessarily decided' at the first trial. We find no error.

". . . Notwithstanding [the jury's] finding [of not true on the personal-use-of-a-knife allegation], the People argue the jury did not 'necessarily decide' defendant did not personally use a knife in killing Guadron because evidence at trial suggested the murder weapon could have been a razor-type box opener, rather than a knife; thus, the jury verdict could simply reflect confusion over what type of weapon had been used.

"The record simply does not support the People's contention. [Fn. omitted.] A forensic pathologist testified the mortal wounds were made by a knife blade several inches long with one sharp edge and one blunt edge. Nubla testified to seeing defendant stab Guadron with a six-inch knife and contradicted the suggestion he had earlier told investigators that a 'box knife' had been used. The transcript of that interrogation itself adds nothing to the People's argument. Nubla initially answered affirmatively to the officer's question, 'What was Victor cut with? One of those razor blade things?' Moments later, however, Nubla corrected the officer, stating three times defendant stabbed Guadron with a steak knife, not a box opener. On this record, no reasonable jury would have been confused as to whether the murder weapon was or was not a knife.

"Nor does it matter that the jury was given no instruction on [the personal-use-of-a-knife allegation], as the People contend. Although the People protest the term[s] . . . ha[ve] a technical meaning not apparent to a jury absent specific instructions (which, apparently, neither the People nor defendant requested), here the verdict form itself specified the precise factual issue the People now seek to relitigate: whether defendant murdered Guadron with a *knife*. Given the plain wording of the verdict form, we are satisfied that question has been resolved.

". . . . . . . . . . . . . . . . . . . . . . . .

"Pursuant to the foregoing, we hold the trial court correctly ruled the prosecution could not retry defendant on the theory he personally used a knife during the killing. In so doing, we emphasize this is not a case where the special finding was logically inconsistent with the guilty verdict, in the sense of eluding rational explanation. As in *Pettaway* v. *Plummer*, *supra*, 943 F.2d at page 1046, this, too, 'is not a case in which there is a "truly

inconsistent verdict." To the contrary, there is a rational explanation that takes into account the whole of the jury's verdict.' Consequently, we have had no occasion to consider whether preclusive effect should be given to a negative special finding that cannot be rationally reconciled with the guilty verdict it accompanies."