Filed 3/1/22  P. v. Vaughn CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>  v.<br><br>CHERYL JEAN VAUGHN,<br><br>       Defendant and Appellant. | C091594<br><br>(Super. Ct. No. 99F06174) |

Defendant Cheryl Jean Vaughn appeals from the trial court's order denying her petition for resentencing under Penal Code section 1170.95.[1]  Defendant contends the trial court erred in summarily denying her petition after determining she failed to establish a prima facie case under the provisions of the statute.  She contends the trial court should have issued an order to show cause and allowed her petition to proceed for full consideration on its merits.  We will affirm.

---

[1]  Undesignated statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Defendant's Case*

In 2002, a jury found defendant guilty of second degree murder (§ 187) and found true that she (1) personally and intentionally discharged a firearm which proximately caused the victim's death (§ 12022.53, subd. (d)) and (2) personally used a firearm during the killing (§ 12022.5, subd. (a)(1)). The jury found defendant not guilty of discharging a firearm in a grossly negligent manner. (§ 246.3.) The trial court sentenced defendant to 40 years to life in state prison. On appeal, we modified the victim restitution order but otherwise affirmed the judgment. (*People v. Vaughn* (May 14, 2004, C040977) [nonpub. opn.].)

A detailed recitation of the underlying facts is set forth in our prior opinion in this case. (*People v. Vaughn, supra*, C040977.) In short, defendant was standing outside her home when emergency personnel arrived in response to several 911 calls. Meanwhile, the victim (who was defendant's cohabitant) had been shot and was lying in the bathroom doorway. There was a hole in the bathroom door that indicated a bullet had passed through it from outside the bathroom, fired at close range to the door. Defendant had taken her four-year-old child to a neighbor's house, and no one else was at home. The police did not find any signs of forced entry, and defendant said she had no idea what happened. Defendant's child told police that defendant had shot the victim. Police later found the gun, which had defendant's fingerprint on it, near defendant's home. During trial, several witnesses testified about prior domestic violence incidents between defendant and the victim, and a defense expert opined that defendant suffered from battered spouse syndrome. Defendant told the expert during an interview that she had shot the victim, although she did not remember pulling the trigger.

B. *Defendant's Petition*

In January 2019, defendant filed a form petition for resentencing under section 1170.95. In the petition, defendant declared that a complaint, information, or indictment

had been filed against her that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, that she was convicted of first degree or second degree murder under the felony-murder rule or the natural and probable consequences doctrine, and that she could not now be convicted of first or second degree murder based on the recent changes to sections 188 and 189. She requested that the court appoint her counsel.

The trial court appointed counsel and received briefing from the parties, with the People arguing defendant was ineligible for relief because she was the actual killer.

In September 2019, the trial court ordered special briefing, asking the parties to address whether defendant's petition should be denied because it appeared she had been necessarily convicted of second degree murder based solely on the malice aforethought theory. The court noted the jury had been instructed based on two alternate theories of guilt: (1) malice aforethought murder and (2) felony murder based on negligently discharging a firearm resulting in death (§ 246.3). However, the jury found defendant not guilty of violating section 246.3 and instead found true that she personally and intentionally discharged the firearm and caused the victim's death (§ 12022.53, subd. (d)). As such, it was beyond a reasonable doubt that the jury unanimously disbelieved the felony-murder theory and instead convicted defendant of malice aforethought murder. Given that sections 187 and 188 still provide for second degree murder based on malice aforethought, defendant was ineligible for relief.

In supplemental briefing, defendant argued it was possible she had been convicted under a felony-murder theory. Citing *People v. Santamaria* (1994) 8 Cal.4th 903, 911, defendant noted that inherently inconsistent verdicts are allowed to stand. Defendant further argued that, pursuant to *People v. Chun* (2009) 45 Cal.4th 1172 (*Chun*), the jury's acquittal on the underlying felony of violating section 246.3 did not compel the conclusion that the jury based its verdict on a theory of malice.

3

During a January 2020 hearing, the court noted it had reviewed our opinion, the probation report, and the jury's verdict. In addition, the court had reviewed the jury instructions, which included instructions for a section 246.3 offense: " 'A person must intentionally pull the trigger of a firearm to be guilty of [section 246.3]. Thus an unintentional or accidental pulling of the trigger does not constitute a violation of the statute. In addition, an honest belief that a gun is unloaded negates the mental state of an intent to fire the gun,' and that the second-degree felony murder rule applies 'when the perpetrator had the specific intent to commit' [the section 246.3] offense." The jury was also instructed: " 'If you decide that the homicide resulted from the perpetration of an assault or an assault with a deadly weapon, the second degree felony murder doctrine does not apply. [¶] The crime of assault, defined in [section 240] as an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another, does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.' " With respect to the section 12022.53, subdivision (d) firearm use enhancement, the jury was instructed that "it must determine whether defendant 'intentionally and personally discharged a firearm,' and that 'means that the defendant herself must have intentionally discharged it.' " After hearing argument from counsel, the court reserved judgment.

In a written ruling issued in February 2020, the court denied defendant's petition and declined to issue an order to show cause, finding that defendant had failed to state a prima facie case for relief. The court noted that, in enacting Senate Bill No. 1437 (2017-2018 Reg. Sess.), the Legislature amended the definition of second degree murder to require malice aforethought and not allow the imputation of malice from a defendant's mere participation in a crime. The court further noted that, in *Chun*, our Supreme Court found that second degree murder could not be based on violating section 246 or 246.3 by

4

discharging a firearm. Similar to the defendant in *Chun* (who was acquitted of violating § 246), defendant here had been acquitted of violating section 246.3 but found guilty of second degree murder. Also similar to *Chun*, the jury here had been instructed that it could only find defendant guilty of (1) violating section 246.3 if defendant had the specific intent to commit the crime and (2) second degree murder based on a felony-murder theory if it found more than just a mere assault or assault with the firearm. The court also noted that the jury found the section 12022.53, subdivision (d) firearm enhancement true.

The court reasoned: "Under these circumstances and upon the evidence presented at trial, it is beyond a reasonable doubt that if any juror had based the second degree murder verdict solely on a second-degree felony-murder theory, that juror necessarily found that [defendant] specifically intended to discharge the firearm with not only gross negligence but with *a more culpable mental state than* . . . gross negligence, into the bathroom through the bathroom door while standing six inches outside the bathroom door and while the victim was inside . . . . Just as in *Chun*, that evidence supports intent to kill or at least conscious disregard for human life, not just mere gross negligence."

The court further reasoned that, unlike *Chun*, the verdicts here were not inconsistent. In acquitting defendant of violating section 246.3, it appeared the jury had rejected the "*lower mens rea* standard of 'gross negligence' for that underlying felony, a 'gross negligence' standard not required for the underlying felony involved in *Chun*. The jury instructions and verdicts show that the jury necessarily found that [defendant] intentionally and personally fired the firearm." The court noted that defendant had not offered any evidence indicating she was not the shooter, meaning that it was "undisputed" at trial that she was the actual killer. The court reasoned that this alone "would have supported a verdict of second degree murder based on either an express or an implied malice theory."

The court noted that the jury had three theories under which it could convict defendant of second degree murder: (1) she harbored the intent to kill when she fired the gun at close range, (2) she fired the gun with conscious disregard for human life, and (3) she fired the gun with gross negligence (i.e., disregard for human life that did not require the subjective element of the disregard being conscious). The jury's acquittal on the section 246.3 offense was "more likely" a "statement" that the jury rejected the idea that the discharge of the firearm was of the lower level of nonconscious disregard, and instead was the higher level of express or implied malice. Moreover, a review of the evidence demonstrated beyond a reasonable doubt that the jury rejected defendant's battered spouse defense and instead convicted defendant of second degree murder based solely on express or implied malice. This was especially true because the jury had found true the section 12022.53, subdivision (d) firearm enhancement.

**DISCUSSION**

**I**

A.    *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration

6

of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a); Stats. 2018, ch. 1015, § 4.)

As relevant here, once a complete petition is filed, "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c); Stats. 2018, ch. 1015, § 4.) Our Supreme Court recently clarified that section 1170.95, subdivision (c) requires only a single prima facie

7

showing and entitles the petitioner to the appointment of counsel upon the filing of a facially sufficient petition. (*People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).) Once the court has appointed counsel and received briefing from the parties, it may rely on the record of conviction in determining whether that single prima facie showing has been made. (*Id*. at p. 971.) The record of conviction includes a prior appellate court opinion, although such an opinion may not supply all necessary answers. (*Id*. at p. 972.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited." (*Lewis, supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id*. at p. 972; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).)

"Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis, supra*, 11 Cal.5th at p. 971; see also *Drayton, supra*, 47 Cal.App.5th at p. 978.) Once the trial court issues an order to show cause, it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subdivision (d) unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record. (§ 1170.95, subd. (d)(2); *Drayton*, at pp. 980-981.)

Although a court should not reject a petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing (*Lewis, supra*, 11 Cal.5th at p. 971), the court need not credit factual assertions that are untrue as a matter of law (*Drayton, supra*, 47 Cal.App.5th at p. 980). Thus, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the

court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, at p. 971; *Drayton*, at p. 979.)

B.    *Chun*

In *Chun*, which was decided after defendant's case was final, the jury was instructed on murder, including second degree felony murder with an underlying felony of shooting at an occupied vehicle under section 246.  (*Chun, supra*, 45 Cal.4th at p. 1178.)  The jury found the defendant guilty of second degree murder.  (*Id.* at p. 1179.)  The jury also found not true a personal firearm use allegation and found the defendant was not guilty of violating section 246.  (*Chun*, at pp. 1179-1180.)  Our Supreme Court held that a violation of section 246 or 246.3 cannot be the basis of a felony-murder instruction because it is assaultive in nature and therefore merges with the homicide.  (*Chun*, at p. 1200.)

In considering whether the trial court's error in instructing the jury under this theory was prejudicial, the *Chun* court reasoned that the acquittal of the underlying felony "strongly suggests the jury based its murder conviction on a valid theory of malice but, under the circumstances, we do not believe that it alone does so beyond a reasonable doubt."  (*Chun, supra*, 45 Cal.4th at p. 1204.)  But, it was clear beyond a reasonable doubt that the verdict was made under a valid theory of malice because the instructions required the jury to find that defendant had the specific intent to commit the felony of shooting at an occupied vehicle.  (*Id.* at p. 1205.)  Because "any juror who relied on the felony-murder rule necessarily found that defendant willfully shot at an occupied vehicle[,] . . . [n]o juror could have found that defendant participated in this shooting, either as a shooter or as an aider and abettor, without also finding that defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice.  In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice."  (*Ibid.*)

9

C.      *Defendant's Contentions*

Defendant contends the trial court erred in summarily denying her petition. According to defendant, whether the jury convicted her of second degree murder based on a finding of malice aforethought could not be determined as a matter of law on the record before the trial court. Even though defendant cited *Chun* in support of her argument before the trial court, defendant now argues it was improper for the trial court to rely on the prejudice analysis in *Chun* because it is inapplicable in the context of determining whether a prima facie case has been established under section 1170.95. Defendant further argues the evidence of malice aforethought was "overwhelming" in *Chun*, but her "mental state is far more ambiguous and subject to reasonable doubt."

In addition, defendant relies on *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*) in arguing that the jury's true finding on the section 12022.53, subdivision (d) firearm enhancement was insufficient to establish that she intended to kill or acted with implied malice. (See *Offley*, at pp. 598-599 [reasoning that, where the defendant was convicted of murder and attempted murder after shooting into an occupied vehicle, the jury's true finding on a § 12022.53, subd. (d) enhancement failed to establish by itself that the defendant acted with malice aforethought because the enhancement does not require that the defendant acted either with intent to kill or with conscious disregard for life].) Defendant's contentions are without merit.

D.      *Analysis*

Despite defendant's contentions, the trial court properly denied defendant's petition. It was undisputed at trial that defendant was the actual killer, placing at issue defendant's mental state during the shooting. Similar to *Chun*, the instructions regarding section 246.3 required the jury to find that defendant had the specific intent to pull the trigger of a firearm. In addition, the jury was instructed that the second degree felony-murder doctrine did not apply if the jury decided that the homicide resulted from the perpetration of an assault or an assault with a deadly weapon. In other words, the jury

10

could only have found defendant guilty of second degree felony murder if it found more than just a mere assault or assault with the firearm. Combined with the jury's true finding that defendant intentionally and personally discharged the firearm proximately causing death to the victim (§ 12022.53, subd. (d)), the record establishes beyond a reasonable doubt that the jury necessarily would have convicted defendant on either a theory of actual malice or implied malice.

We do not find *Offley* instructive here. In *Offley*, the sole reason the trial court gave for dismissing the defendant's section 1170.95 resentencing petition was that the jury had found true a section 12022.53, subdivision (d) enhancement. (*Offley, supra*, 48 Cal.App.5th at p. 594.) Here, in contrast, the trial court considered the entire record of conviction, including the instructions, the jury's true finding on the section 12022.53, subdivision (d) enhancement, and the jury's finding that defendant was not guilty of violating section 246.3. In sum, the trial court did not err in denying defendant's petition.

## DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

/s/
RAYE, P. J.


We concur:


/s/
HULL, J.


/s/
ROBIE, J.


11