Filed 5/4/23 P. v. Perez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LUIS PEREZ et al.,<br><br>Defendants and Appellants. | B317663<br><br>(Los Angeles County<br>Super. Ct. No. TA125735) |

APPEAL from orders of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge. Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant Luis Perez.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant Ezequiel Ruiz.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Luiz Perez (Perez) and Ezequiel Ruiz (Ruiz) (collectively, defendants) appeal the trial court's denial of their petitions for resentencing under Penal Code section 1172.6 (former section 1170.95).[1]  Because the petitions were properly denied, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.   **Facts[2]**

A.   *The underlying crimes*

In the early morning hours of September 1, 2012, Perez, Ruiz, and another gang member punched and kicked a rival gang member, Julio Mejia (Mejia), until he was on the ground, and then continued to stomp on his head and body.  Blood was

---

[1]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). For the sake of simplicity, we will refer to the section by its new numbering only.

     All further statutory references are to the Penal Code unless otherwise indicated.

[2]    We draw these facts from our prior, unpublished appellate opinion affirming defendants' convictions.  (*People v. Perez et al.* (Mar. 6, 2017, B269704) [nonpub. opn.].)

everywhere. Perez and Ruiz placed Mejia's limp body in a trash can and wheeled him down the street to an empty lot where Miguel Barajas (Barajas) and other fellow gang members hung out. Perez carved one of their gang symbols—the letter "V"—into Mejia's chest by making 10 cuts with a sharp object. Perez and Ruiz then walked away, leaving Mejia moaning in a pool of his own blood.

Barajas decided to "clean[ ] up their mess" by "finish[ing] the job." He wrapped several pieces of broken cinderblock into a T-shirt and bludgeoned Mejia over the head with his makeshift weapon until Mejia no longer moved. Barajas then wrapped Mejia's body in a carpet and tarp, placed it in the trunk of a car, and drove to a park in Long Beach. Once at the park, Barajas put Mejia's body in a group of bushes, doused it with lighter fluid, and set it ablaze.

## B. *Trial, conviction and sentencing*

The People charged (1) Perez, Ruiz and Barajas with Mejia's murder (§ 187, subd. (a)), (2) Perez and Ruiz with kidnapping Mejia (§ 207, subd. (a)), and (3) Perez with torturing Mejia (§ 206). The People also alleged, as to all three defendants, (1) the special circumstance that the murder was committed in the course of a kidnapping (§ 190.2, subd. (a)(17)), and (2) the special circumstance that defendants intentionally killed Mejia while being active participants in a criminal street gang (§§ 186.22, subd. (f), 190.2, subd. (a)(22)). The People alleged, as to Perez alone, the special circumstance that the murder was intentional and involved the infliction of torture (§ 190.2, subd. (a)(18)). The People alleged that all of the charged crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)).

3

All three defendants proceeded to a joint jury trial.

At the conclusion of the trial and as pertinent to this appeal, the court instructed the jury that Perez and Ruiz could be convicted of murder on the following theories: (1) of first or second degree murder, either as (a) Mejia's actual killers (the actual killer theory) or (b) aiders and abettors of Barajas, where Barajas is the actual killer of Mejia (the direct aiding and abetting theory); and (2) of first degree murder under the theory that the murder occurred during the course of the felony of kidnapping (the felony-murder theory). Indeed, the court confirmed these were the pertinent theories when it instructed that Perez and Ruiz were being prosecuted for murder "under two theories: (1) malice aforethought, and (2) felony murder." (CALCRIM No. 548.) The court conveyed these theories by giving the pattern jury instructions on murder, aiding and abetting, and felony murder as to kidnapping. The court did not instruct on the natural and probable consequences theory of liability. The trial court also instructed the jury that it "must also decide whether the People have proved that one or more of the special circumstances is true" *if* they find a defendant guilty of *first degree* murder.

The jury convicted Barajas of first degree murder, and found true the gang special circumstance, which rested upon the finding that Barajas intentionally killed Mejia while he was an active participant in a criminal street gang and that the murder was carried out to further the activities of the gang. The jury convicted Perez and Ruiz of second degree murder, convicted both of kidnapping, and convicted Perez of torture. The jury also found true the kidnapping special circumstance. As to all crimes and all defendants, the jury found true the allegation that the

4

crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang.

The trial court sentenced Perez to prison for 48 years to life, comprised of 15 years to life for second degree murder, plus a consecutive life sentence with a 15-year minimum for the torture count (calculated as a life term with a 15-year minimum for the gang enhancement), plus a consecutive 18-year term for the kidnapping (calculated as an eight-year base term plus 10 years for the gang enhancement). The court sentenced Ruiz to prison for 33 years to life, comprised of 15 years to life for second degree murder plus a consecutive 18-year term for the kidnapping.

C.    *Direct appeal*

Defendants appealed their convictions, raising a host of evidentiary and instructional challenges. We rejected one of their challenges to the felony-murder instructions in part because it could provide no basis for reversal: "Because the jury found Perez and Ruiz guilty of second degree murder," we reasoned, the jury's "verdict necessarily rests on malice aforethought, not on the felony-murder rule." We affirmed the convictions, but ordered that their sentences be modified slightly.

## II.    Procedural Background

In January 2019 and September 2019, Ruiz and Perez filed their respective petitions for resentencing under section 1172.6. Perez subsequently filed a brief in support of his petition. The People filed a variety of responses.

The petitions were bounced between various trial judges. At a June 9, 2021, status conference, Perez's lawyer represented that no order to show cause had been issued. At an August 25, 2021, hearing before the judge who had presided over the trial but who had not presided over the June 9, 2021, hearing, the

court noted its belief that an order to show cause *had* been issued based on a "prima facie" case being "found." That judge thus convened an "O.S.C. evidentiary hearing" on December 1, 2021. Neither defendants nor the People presented any new evidence. The court took the matter under submission and issued two identical orders denying relief in January 2022. Specifically, the court made a "factual finding" that "[t]he People have proven beyond a reasonable doubt that [defendants are] ineligible for resentencing" because their convictions did not rest on any now-invalid theory of murder liability: The jury's verdict of *second* degree murder, as we noted in our prior opinion, necessarily meant that the jury's verdict did not rest on the now-potentially-invalid felony-murder theory because the felony-murder instruction dictated a conviction of *first* degree murder; and the jury was never instructed on the now-invalid natural and probable consequences theory.

Defendants each filed timely appeals.

## DISCUSSION

Defendants argue that the trial court erred in denying their petitions for resentencing under section 1172.6. In considering this argument, we independently evaluate questions of law and the application of the law to undisputed facts. (*Tsasu LLC v. U.S Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 715.) This includes the determination of whether a section 1172.6 petition is ineligible for relief as a matter of law. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (*Lopez*).) We review for substantial evidence any factual findings made by the trial court. (*People v. Tully* (2012) 54 Cal.4th 952, 979.)

"Our Legislature enacted what is now section 1172.6 and simultaneously amended sections 188 and 189 in order to

6

eliminate criminal liability for murder, attempted murder, and manslaughter absent a showing of the defendant's *personal* intent; no longer can a conviction for these crimes rest on notions of vicarious intent—that is, on the imputation of *someone else's* intent to the defendant based solely on the defendant's 'participation in the crime.' (§§ 188, 189, 1172.6, subd. (a).) Now, a conviction for these crimes requires proof that the defendant (1) was the actual killer (who acted with the requisite express or implied malice), (2) directly aided and abetted the actual killer while acting with [express or implied malice], or (3) was a major participant in a felony who acted with reckless indifference to the value of human life. (§§ 188, 189.) While the amendments to sections 188 and 189 narrow the elements of murder prospectively, section 1172.6 is the statutory mechanism for determining whether to *retroactively* vacate a final murder, attempted murder, or manslaughter conviction that does not comply with the new, narrower definitions. A defendant seeking relief under section 1172.6 must 'file a petition' alleging entitlement to relief along with '[a] declaration' attesting to eligibility for relief. (§ 1172.6, subds. (a) & (b)(1)(A).) If the defendant 'makes a prima facie showing' of entitlement to relief (that is, if the record of conviction does not establish ineligibility for relief as a matter of law), then the court must in most cases convene an evidentiary hearing where the People bear the burden of establishing beyond a reasonable doubt that the defendant is guilty of the pertinent crime under the new, narrower definitions. (§ 1172.6, subds. (c) & (d).) At that evidentiary hearing, the court may consider 'evidence previously admitted at any prior hearing or trial' that is admissible under current law, as well as 'new or additional evidence' that is

7

admissible under current law [and 'the procedural history of the case recited in any prior appellate opinion.'] (§ 1172.6, subd. (d)(3).) If the People 'fail[s] to sustain its burden of proof' at the evidentiary hearing, *then* the conviction must be 'vacated' and the defendant resentenced. (§ 1172.6, subd. (d)(3).)" (*People v. Duran* (2022) 84 Cal.App.5th 920, 927.)

We independently conclude that defendants' petitions were properly denied because defendants are not eligible for relief under section 1172.6 as a matter of law.

A defendant is ineligible for relief if the instructions given to the jury as well as the jury's verdict necessarily—and hence definitively—show that the defendant's murder conviction rests solely on still-valid theories of liability. In assessing what the jury necessarily determined, we may examine both the jury instructions as well as the jury's verdicts and findings. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 866-867 [looking to absence of instructions on an invalid theory]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [same]; *Lopez, supra*, 78 Cal.App.5th at p. 11 [same]; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1257, 1259 [looking to jury's verdicts and findings to assess what they "necessarily" mean about the theories of liability underlying the verdict].)

The jury instructions as well as the jury's verdicts and findings in this case definitively establish that defendants' murder convictions rest on a still-valid theory of criminal liability. Here, the jury was instructed that it could convict Perez and Ruiz of murder on (1) one of two malice-based theories (namely, as actual killers acting with implied malice or as aiding and abetting Barajas in murdering Mejia), or (2) a felony-murder theory. There was no instruction on the natural and probable

8

consequences theory. The jury's verdicts and special circumstance findings further narrowed the possible bases for defendants' murder convictions. The jury found defendants guilty of *second* degree murder; because the jury instructions specified that the felony-murder theory demanded a conviction of *first* degree murder, the jury's rejection of first degree murder necessarily means that the jury's verdict did not rest on a felony-murder theory. The jury also found true the gang special circumstance as to Barajas, which required a finding that Barajas intentionally murdered Mejia, which necessarily means that defendants must have aided and abetted Barajas as Barajas committed the murder with *express* malice (rather than *implied* malice). (Accord, *People v. Coley* (2022) 77 Cal.App.5th 539, 547-548 ["An intent to kill is the equivalent of express malice . . ."].)

In light of the jury instructions, the jury's verdicts, and the jury's findings, the only two theories on which the murder verdict against defendants could rest are that (1) Perez and Ruiz were the actual killers who acted with implied malice (because they performed an act—namely, deliberately stomping on Mejia's head and leaving him for dead at the gang's hangout—while subjectively knowing that this conduct "endangers the life of another" (*People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388-389), or (2) Perez and Ruiz aided and abetted Barajas when Barajas intentionally killed Mejia by pummeling his skull with a T-shirt full of cinder blocks. Both of these theories—being an actual killer and being someone aiding and abetting the actual killer who kills with express malice—are still valid theories of murder liability. (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 587-588 [actual killer acting with implied malice is a valid theory]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 232 [same]; *People v. Perez*

9

(2022) 78 Cal.App.5th 192, 205 [directly aiding and abetting the killer who acts with express malice is a valid theory].)

Defendants respond with what seems to boil down to five groups of arguments.

First, defendants argue that the trial court erred procedurally when it issued an order to show cause, which entitled defendants to an evidentiary hearing, but then backtracked and made a "factual finding" that defendants were ineligible for relief based on the jury instructions and the portions of our opinion discussing what the jury's verdicts and findings necessarily meant regarding the underlying theory for liability. Defendants urge—and the People do not dispute—that the trial court's "factual finding" was really a determination that defendants were ineligible for relief as a matter of law, and defendants go on to argue that such a finding is no longer allowed once a court has determined that a prima facie case has been made. Defendants are legally wrong.[3] A trial court may initially determine that there is a prima facie case for relief under section 1172.6, proceed to an evidentiary hearing, and then determine that its initial determination was incorrect and rule that the defendant was ineligible for relief as a matter of law. Contrary to what defendants suggest, there is not some sort of "estoppel" effect that prevents a trial court from correcting its earlier mistake. (E.g., *People v. Medrano* (2021) 68 Cal.App.5th 177, 181-182 [so holding]; *People v. Garrison* (2021) 73 Cal.App.5th 735, 745-746.)

---

[3]     Defendants may also be factually wrong, as the record reflects only that the second trial judge *thought* the first judge found a prima facie case; the record does not reflect such a prior finding.

10

Second, defendants seem to assert that there is insufficient evidence to support a verdict of guilty on either of the still-valid theories of (1) being an actual killer acting with implied malice, or (2) aiding and abetting Barajas as he intentionally murdered Mejia. This assertion has no place in a section 1172.6 petition. The purpose of that petition is to determine whether a murder conviction rests on a now-invalid theory of liability; it is not to serve as a vehicle for collaterally attacking the sufficiency of the evidence underlying a murder conviction on the theories that still validly support it. (E.g., *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1167-1168 [section 1172.6 petitions may not be "us[ed] as a vehicle for collaterally attacking . . . the sufficiency of the evidence"], overruled on other grounds in *People v. Lewis* (2021) 11 Cal.5th 952, 966.)

Third, defendants contend that the jury's verdict is inherently inconsistent because the jury's verdict of second degree murder means that the jury *rejected* felony murder as a theory, yet the jury nevertheless returned a "true" finding on the kidnapping special circumstance, which only applies if there is a first degree murder conviction. This is of no moment. To begin, inconsistency within a jury's verdict does not call into question the soundness of that verdict. (*People v. Santamaria* (1994) 8 Cal.4th 903, 911.) More to the point, the jury's verdict fixing the degree of murder at second degree renders its special circumstance finding superfluous; it does not call into question the jury's determination that the murder is in the second degree and hence not based on a felony-murder theory.

Fourth, defendants argue that the trial court was wrong to conclude that they are ineligible for relief under section 1172.6 as a matter of law because (1) the pattern jury instructions that

11

provide for a conviction of aiding and abetting a perpetrator who acts with implied malice sometimes leave the door open for conviction on a now-invalid theory if those instructions are not "properly tailored" (under *People v. Powell* (2021) 63 Cal.App.5th 689, 714-715; *People v. Langi* (2022) 73 Cal.App.5th 972, 981-983), and (2) the jury here did not make any findings that Perez and Ruiz were major participants who acted with reckless indifference to human life, as those terms were narrowed in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. These arguments are irrelevant because the jury's verdict does not rely on a theory of aiding and abetting an *implied* malice murder or on a felony-murder theory. Thus, the potential defects defendants cite in no way undermine the correctness of dismissing their petitions.

Lastly, defendants raise a host of constitutional issues, claiming that denial of their petitions violates due process, violates equal protection, and inflicts cruel and unusual punishment. These arguments lack merit. Defendants urge that denying them relief violates due process because the trial court failed to follow the proper procedures set forth in section 1172.6. (Accord, *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346 [deprivation of state law right to jury determination of sentence violated the defendant's federal due process rights].) Because we have concluded that the procedures were properly followed, the factual premise of this argument is absent. Defendants urge that denying them relief violates equal protection because other people who are entitled to relief are granted relief, yet defendants were denied relief despite being entitled to it. Again, because we have concluded that defendants are not entitled to relief, the factual premise of this argument is also absent. Defendants urge

12

that denying them relief means they are subjected to cruel and unusual punishment.  Defendants have forfeited this argument by not supporting it with any reasoned argument.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793.)  What is more, defendants cite no precedent to support the notion that denial of post-conviction ameliorative relief to a previously sound conviction results in a cruel and unusual punishment.

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST